[L. A. No. 1129. Department Two.—November 6, 1903.]

WINIFRED KEAN DONNELLY, Respondent, .v. D. W. REES, and THOMAS O'BRIEN, Appellants.

ACTION BY HEIR TO SET ASIDE DEED—FRAUD AND UNDUE INFLUENCE UPON HABITUAL DRUNKARD.—An action may be maintained by the sole heir of a deceased person to set aside a deed procured from the deceased without consideration by the fraudulent practices of the defendants and their undue influence over the deceased, who was known to be an habitual drunkard for more than five years before the execution of the deed, to an extent seriously to impair his mind, and who was so intoxicated at the time as to render him unfit to transact business, and entirely incapable of realizing, understanding, or attending to the transaction.

ID.—EVIDENCE—DECLARATION OF GRANTOR—SILENCE OF DEFENDANTS.— In such action a declaration of the grantor made in an affidavit in an attachment suit brought by his creditor, to the effect that the deed was not sham, or without consideration, or in fraud of creditors, was admissible, but not conclusive on the court; and where the affidavit was made in the presence of the defendants, and alluded to "a contemporaneous writing executed" by them, of which they say nothing in their testimony, their silence is a significant circumstance against them.

ID.—INVOLUNTARY TRUST—CONSTRUCTION OF CODE.—Where it appears that the defendants gained the land by actual fraud, and also by undue influence, and by the violation of an assumed trust, they are, under section 2224 of the Civil Code, involuntary trustees of the thing gained as against the heirs of the deceased grantor.

ID.—FRAUD UPON CREDITORS—GENERAL RULE INAPPLICABLE.—The general rule that a court of equity will not grant relief to one who

has made a deed to defraud creditors has no application where the deed was procured by fraud or undue influence of the defendants, who will not be allowed to perpetrate a greater fraud, and to take advantage of their own wrong and of the absence of free consent of the grantor, and who, under express statutory provision, take as trustees of the grantor.

ID.—EVIDENCE—HABITS AND CONDITION OF GRANTOR.—The objection that evidence was allowed as to the drunken habits and condition of the grantor, at periods from seventeen to twelve years prior to the date of the transaction, goes rather to the weight than to the admissibility of the testimony.

ID.—ACTION TO ENFORCE TRUST—RESCISSION NOT INVOLVED.—In an action to enforce an involuntary trust in favor of an heir of the deceased grantor, the objection that the grantor did not rescind promptly is untenable.

ID.—CHARGES NOT CONNECTED WITH TRANSACTION—PAYMENTS NOT REQUIRED.—The plaintiff was not required to make any payments on account of an alleged bill against the grantor, or for moneys alleged to have been advanced to him subsequently to the alleged transaction, where these matters cannot be regarded as connected with the transaction.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. John L. Campbell, Judge.

The facts are stated in the opinion.

R. F. Del Valle, and M. E. C. Munday, for Appellants.

Heirs cannot attack a deed executed to defraud creditors. (*Reichart* v. *Castator,* 5 Binn. 109;[1] *Terrell's Heirs* v. *Cropper,* 9 Martin, 350;[2] *Davis* v. *Swanson,* 54 Ala. 277.[3]) Mere ordinary drunkenness will not avoid a deed or contract. (*Pickett* v. *Sutter,* 5 Cal. 412; *Carender* v. *Waddington,* 5 Mo. App. 457; *Mansfield* v. *Watson,* 2 Iowa, 111; *Belcher* v. *Belcher,* 10 Yerg. 121; *Harbison* v. *Lemon,* 3 Blackf. 51;[4] *Taylor* v. *Purcell,* 60 Ark. 606; *Henry* v. *Ritenour,* 31 Ind. 136; *Loftus* v. *Malony,* 89 Va. 576; *Johns* v. *Fritchey,* 29 Md. 258; *Bates* v. *Ball,* 72 Ill. 108.) Prompt rescission and restitution of consideration was necessary to avoid the deed, which may

[1] 6 Am. Dec. 402.
[2] 13 Am. Dec. 309.
[3] 25 Am. Rep. 678.
[4] 23 Am. Dec. 376.

be ratified when sold. (*Joest* v. *Williams,* 42 Md. 565;[1] *Carpenter* v. *Rogers,* 61 Mich. 384;[2] *Williams* v. *Walnek,* 1 Bail. 343; *Eaton* v. *Perry,* 29 Mo. 96; *Smith* v. *Williamson,* 8 Utah, 219.)

·  H. C. Rolfe, and Crawford & Clarke, for Respondent.

The parties were not *in pari delicto,* and the defendants are chargeable as being guilty of the greater fraud, and are chargeable in equity. (*Copeland* v. *Long,* (Tenn.) 41 S. W. 866, 872; *Ford* v. *Harrington,* 16 N. Y. 162; *Osborn* v. *Williams,* 18 Ves. 379; *Pinckston* v. *Brown,* 3 Jones Eq. 494; *Phalen* v. *Clarke,* 19 Conn. 420; *Freelove* v. *Cole,* 41 Barb. 318; *Sallee's Executor* v. *Sallee,* (18 Ky. Law Rep. 74) 35 S. W. 437; *Long* v. *Long,* 9 Md. 348; *Boyd* v. *Montagnie,* 73 N. Y. 498;[3] *Boston* v. *Balch,* 69 Mo. 115; *Davies* v. *Otty,* 35 Beav. 208; *Rozell* v. *Van Sycle,* 11 Wash. 79; *Harper* v. *Harper,* 85 Ky. 100.) Rescission was not required. That is only one of the remedies the defrauded party may resort to. (*More* v. *More,* 133 Cal. 489; *Field* v. *Austin,* 31 Cal. 379; 1 Perry on Trusts, sec. 166; 2 Pomeroy's Equity Jurisprudence, secs. 1044, 1045, 1055; Civ. Code, sec. 2224.)

SMITH, C.—Appeal from a judgment for the plaintiff and from an order denying the defendants' motion for a new trial. The plaintiff is the daughter and sole heir of Patrick Kean, and brings this suit to set aside, as fraudulently obtained, a deed made by her father to the defendant—of date November 15, 1897. The land conveyed was an undivided half of certain mines owned by the former, and, it is found, was of the value of ten thousand dollars. The material questions in the case are presented by the second finding of the court, which is·as follows:—

"That on the fifteenth day of November, 1897, and while said Patrick H. Kean was the owner of the half interest in the mining claims described and referred to in the complaint, the defendants fraudulently, and without any consideration, and by arts and importunities and by greater force of character and ascendency over the mind of said Patrick H. Kean,

[1] 13 Am. Rep. 377.          [3] 29 Am. Rep. 197.
[2] 1 Am. St. Rep. 595.

procured from him the deed of conveyance and transfer to them set out and described in the complaint, which deed was made while the said Kean was in a condition of intoxication and drunken imbecility and very weak in mind from the effects of the excessive drinking of intoxicating liquors to such an extent as to render him unfit to transact business and entirely incapable of properly realizing and understanding or attending to the said transaction. And for more than five years immediately before the making of said deed, the said Kean had been and was an habitual drunkard and constantly under the influence of the excessive drinking of intoxicating liquors, which were injurious to his mind so as to make him an easy prey to the arts and schemes of the defendants, which they exercised over him to induce him to execute said deed, and but for which he would not have done it."

Hence, rearranging the order of the findings, and stating merely their effect, the case presented may be briefly stated in four propositions, to wit: 1. For five years before the execution of the deed Kean had been an habitual drunkard to an extent seriously to impair his mind, and such as "to make him an easy prey to the arts and schemes" of defendants or other designing people; 2. He was in such a condition of drunkenness when he made the deed "as to render him unfit to transact business, and entirely incapable of realizing and understanding or attending to the said transaction"; 3. The deed was without consideration; and 4. It was procured by the fraudulent practices of the defendants, or, in the terms used in the findings, it was fraudulently procured by "the arts and importunities" or "arts and schemes" of the defendants, and by undue influence exercised over the grantor by them.

It is necessary only to consider the evidence bearing on the last finding, which consists of the facts found in the first, second, and third—all of which tend strongly to support it— and the testimony of Carroll; which is to the effect that the day before the transaction "Kean was speaking of transferring his mine for the purpose of evading" an anticipated attachment by one Monaghan (to whom it appears he was indebted in the sum of about one hundred dollars), and wanted him or his wife to accept the deed, which they declined to do. Thereupon the defendant Rees, who was present, asked Kean

to make the transfer to him; and Kean consenting, a deed was drawn up by the witness and executed by Kean, but, by reason of Kean's determining to put in another grantee with Rees, was not delivered. The parties then separated, and the defendant O'Brien, having been informed of the facts, told the witness he would like to get his name in the deed, and asked him "to use [his] influence with Kean to that end." In compliance with this request, the deed was drawn up by Carroll, who says he spoke to Kean about it, and used his influence to procure its execution, and the deed was accordingly executed. The defendants, the witness further testified, "both said they would return the property to Kean as soon as he was out of the woods," etc. But after the deed had been executed, he says, "They laughed; they said that was the last of the mine so far as Kean was concerned," etc. Carroll further testifies that Kean was drinking with the defendants during the transaction, and "three or four times" on the invitation of O'Brien; which, in view of Kean's general condition, and of his condition at the particular time, may have been regarded by the court as significant of fraudulent intent, and if the court so regarded it we cannot say it was not justified in doing so.

The defendants' account of the matter is somewhat different, but in view of the findings of the court need not be considered. The same observation is true of Kean's own declaration made in an affidavit in the Monaghan case, to the effect that the deed was not sham, or without consideration, or in fraud of creditors. This was admissible in evidence (Code Civ. Proc., sec. 1853), and if the facts had been doubtful, would have been cogent in its effect; but it was not conclusive on the court. It may be observed that this affidavit, which was made in the presence of the defendants, alludes to a "contemporaneous writing executed by" them, of which they say nothing in their testimony; which is a significant circumstance. (Code Civ. Proc., sec. 1963, subd. 5.)

On the facts found, the case comes within several of the provisions of section 2224 of the Civil Code, which, in view of other questions involved in the case, it may be important to distinguish: (1) The defendants gained the land by *"fraud"* —i. e. by actual fraud,—and also (2) by "undue influence," and are therefore—or, rather, each is "an involuntary trustee

of the thing gained''; and (3) the same result follows, because they gained the thing by ''the violation of a trust.'' Upon either of these principles, therefore, the plaintiff is entitled to recover, unless precluded—as is contended by the appellants —by the fact appearing from the testimony of Carroll, that the deed was made to defraud a creditor; with reference to which contention it is important to observe that the ground of relief under the first and second of the principles referred to is *fraud* and *undue influence* in procuring the original conveyance (*Brison* v. *Brison,* 75 Cal. 527[1]); while under the third there is no fraud in the procurement of the instrument, but the fraud is one of those consisting ''in the fraudulent use of instruments entered into upon a mutual confidence of the parties,'' or, in other words, in violation of the trust voluntarily assumed in accepting the instrument. (Civ. Code, sec. 2219; *Pierce* v. *Robinson,* 13 Cal. 127; *Kimball* v. *Tripp,* 136 Cal. 634, 635; *Knight* v. *Tripp,* 121 Cal. 674; *Davies* v. *Otty,* 35 Beav. 213.)

Counsel for the respondent ''do not deny the general rule that a court of equity will not grant relief to the person who has made a deed to [defraud] creditors,'' and, for the purposes of the decision, this will be assumed to be the law; but their position is, that the rule has no application to a case like the present, where the deed was procured by undue influence or fraud of the defendants; and in this contention I think they are sustained by the authorities cited by them and by others. (Anson on Contracts, 159; Pomeroy's Equity Jurisprudence, secs. 403, 942; Wharton on Contracts, sec. 353, p. 526; Pollock on Contracts, 332; Bump on Fraudulent Conveyances, sec. 436; Broom's Legal Maxims, 701; Story's Equity Jurisprudence, sec. 300; 14 Am. & Eng. Ency. of Law, 279; *Tracy* v. *Talmage,* 14 N. Y. 181;[2] *St. Louis R. R. Co.* v. *Terre Haute R. R. Co.,* 145 U. S. 406, and authorities cited; *Michaels* v. *Hain,* 78 Hun, 499, 500.) The application of the principle is illustrated by the numerous cases cited in respondent's brief, and also by the decision of this court in the case of *Vitoreno* v. *Corea,* 92 Cal. 69, which in principle cannot be distinguished from the case at bar.

---

[1] 7 Am. St. Rep. 189.　　　　[2] 67 Am. Dec. 132, and note.

The reason of the rule is variously given in the authorities cited; and all the reasons given are good. Commonly it is said merely that the parties are not *in pari delicto*—the offense of the party imposed upon being trivial in comparison with that of the other, who is not only guilty of the fraud common to the two, but of a more heinous fraud, in which he alone participates. Another statement of the rule is, that it is founded on "the necessity of preventing imposition," or, as otherwise expressed, "of preventing the perpetration of a greater fraud by the grantee" (Bump on Fraudulent Conveyances, sec. 436), which is also a weighty consideration. For otherwise the rule would in effect hold out a reward to designing persons, who would find in its operation a ready means of defrauding others; of which the case at bar furnished an instructive illustration. Again, it is said: "If the superior should be allowed immunity under such circumstances, he would be permitted to take advantage of his own wrong" (14 Am. & Eng. Ency. of Law, 279); which would be in violation of the fundamental principle of the law embodied in the maxim, *Nullum commodum capere potest de injuria sua propria.* (Coke on Littleton, 148b, cited in Broom's Legal Maxims, 275.) For, it is said, "No man shall set up his own iniquity as a defense, any more than as a cause of action." (*Montefiori* v. *Montefiori*, 1 W. Blackstone, 262, 263.) Finally it is said in the Encyclopedia at the place cited: "The wrong [in such case] rests chiefly, if not solely, on the superior, by whom it will be presumed it was contrived, and the inferior will be regarded as a mere instrument for accomplishing an end not his own;" which is in effect to put the rule on the ground that in such cases the consent of the party imposed on is not free. (Civ. Code, secs. 1567, 1572, 1575.) All of these reasons are satisfactory; but it may be observed especially that the case here comes clearly within the last, which is the narrowest, of the grounds assigned for the rule. It may be added that the principle applies *a fortiori* in this case, where, by express statutory provisions containing no qualifying or excepting words, "one who gains a thing by fraud . . . [or] undue influence" takes as trustee for the grantor. (Civ. Code, sec. 2224.)

Other points urged by appellants may be briefly disposed of. These are, that Kean did not rescind promptly, and that it was error to allow testimony as to the habits and condition of Kean at periods from seventeen to twelve years prior to the date of the transaction. But the last objection affects rather the weight than the admissibility of the testimony (Code Civ. Proc., secs. 1832, 1957, 1960, subd. 2); and the former contention is also untenable. (*More* v. *More,* 133 Cal. 489; *Field* v. *Austin,* 131 Cal. 379; Civ. Code, secs. 3406 et seq.) It was not necessary that the plaintiff should pay to the defendants the amount of their alleged bill, or to O'Brien the amounts alleged to have been advanced to Kean subsequently to the transaction; or that the court should so adjudge under the findings—which we have held to be sustained by the evidence. These matters cannot be regarded as being connected with the transaction.

We advise that the judgment and order appealed from be affirmed.

Chipman, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

.Henshaw, J., McFarland, J., Lorigan, J.