[S. F. No. 6380.   In Bank.—January 15, 1914.]

In the Matter of the Estate of STEPHEN HILL, Deceased. BLOOD RELATIVES OF ISABELLA HILL, Appellants, v. BLOOD RELATIVES OF STEPHEN HILL, Respondents.

ESTATE OF DECEDENT—PROCEEDNGS TO DETERMINE HEIRSHIP—CHARACTER OF PROPERTY AS SEPARATE OR COMMUNITY—FINDINGS AND EVIDENCE.—In this proceeding between the heirs of a husband and those of his wife to determine heirship to his estate, the finding that a certain tract of land was his separate property, and not the property of the community, is a finding of fact, not a conclusion of law, and it has sufficient support in the evidence.

ID.—OWNERSHIP OF PROPERTY—PLEADING AND FINDING—ULTIMATE FACT.—An allegation or finding that a person is the owner of certain property is none the less an allegation or finding of an ultimate fact because the question of ownership depends upon the application of rules of law to the facts shown.

ID.—COMMUNITY OR SEPARATE PROPERTY—ALLEGATIONS AND FINDINGS.— The same considerations apply to an averment or finding that certain property owned by a married person is separate or community property. The evidence from which this ultimate fact is determined is not to be set forth in a pleading nor need it be found by the court.

ID.—FINDINGS — PROBATIVE FACTS OVERCOMING ULTIMATE FACTS.— Findings of probative facts can be used to overcome an express finding of the ultimate fact only where the probative facts are inconsistent with the ultimate facts found, or where it appears that the trial court made the alleged finding of the ultimate fact simply as a conclusion from the particular facts found.

ID.—COMMUNITY OR SEPARATE PROPERTY—CONSISTENCY OF FINDINGS.— On this appeal in proceedings between the heirs of a husband and those of his wife to determine heirship to his estate, the probative facts in the finding are not inconsistent with the conclusion that the property was his separate property. There being no finding that the purchase price paid by him for the property was not his separate property, the appellate court cannot, for the purpose of overthrowing the ultimate finding of the separate character of the property, read into the findings one to the effect that the purchase money was community property.

ID.—PRESUMPTION AS TO CHARACTER OF PROPERTY AS COMMUNITY—REBUTTAL.—Property acquired by a husband during coverture is presumed to be community property, in the absence of a showing that

it was acquired by gift, bequest, devise, or descent, or was purchased with his separate property; but this presumption is rebuttable.

ID.—EQUITABLE CONSIDERATIONS—ADMISSIBILITY TO SHOW WHETHER PROPERTY IS COMMUNITY.—In determining whether the property acquired by a husband was separate or community, regard should be had to his equitable *status* as purchaser, not simply to the technical mode by which the legal title came to be vested in him.

ID.—ADMISSIONS OF WIFE—ADMISSIBILITY TO SHOW PROPERTY IS SEPARATE.—Sworn statements by the wife in her inventory of her husband's estate, and in her application for a homestead, that the property was his separate estate are evidence against her successors in interest.

ID.—JUDGMENT SETTING APART HOMESTEAD—CONCLUSIVENESS AS SHOWING PROPERTY SEPARATE.—Where a widow petitions to have a portion of the estate of her deceased husband set apart to her as a homestead, alleging the property to be his separate estate, the decree setting aside the homestead as prayed is binding upon her and her heirs, and estops them from asserting that the property belonged to the community (Department opinion).

APPEAL from a judgment of the Superior Court of Humboldt County and from an order refusing a new trial. George D. Murray, Judge.

The facts are stated in the opinion of the court.

Coonan & Kehoe, for Appellants.

A. W. Hill, for Respondents.

SLOSS, J.—In a proceeding, under section 1664 of the Code of Civil Procedure, to determine heirship in, and rights of succession to, the estate of Stephen Hill, deceased, a judgment was entered declaring that a certain tract of land was the separate property of Stephen Hill and that the remainder of the estate was the community property of Stephen Hill and his wife Isabella Hill, who had died during the administration of Stephen Hill's estate. Both husband and wife had died intestate. The heirs of Isabella Hill were declared entitled to one-half of the separate property and three-fourths of the balance of the estate. Said heirs appeal from the judgment and from an order denying their motion for a new trial. The one point in controversy between the parties is

whether the tract of land above referred to was the separate property of Stephen Hill or the property of the community.

The findings contain a somewhat full statement of probative facts, and, in addition, declare, both as a finding of fact and as a conclusion of law, that the tract in question was the separate property of Stephen Hill. The probative facts found are as follows: The tract in controversy consists of 236.18 acres of land in Humboldt County. In April, 1858, Stephen Hill acquired an undivided one-half of the land, and on July 25, 1864, the other one-half. Hill was then an unmarried man. He and Isabella Hill were married on the first day of June, 1865, and continued to be husband and wife until the death of said Stephen Hill. In August, 1864, prior to Hill's marriage, he executed and delivered to John S. Connick a deed conveying to said Connick an undivided one-half of said land. Thereupon Connick went into possession of the premises with Hill and the two remained in joint possession until October 15, 1866, on which date Connick agreed to sell to Stephen Hill and Stephen Hill agreed to buy from him the one-half interest theretofore purchased by Connick, and Connick then and there delivered the possession of said property to said Hill and returned to him the deed which Hill had, in August, 1864, delivered to Connick. Said deed of August, 1864, had never been recorded and no writing or other conveyance was then or has since been made by said Connick to said Hill and no other act of any kind to perfect said conveyance was done by said parties other than that Stephen Hill took and retained exclusive possession of the premises and about August, 1867, paid said Connick one thousand one hundred dollars as one-half of the purchase price of Connick's interest and about two months later paid him the remaining one thousand one hundred dollars to complete the payment of said purchase price. After October 18, 1866, Connick made no claim to the ownership of said land. It is found that, except as above stated, Stephen Hill, his predecessors and grantors were in the exclusive possession and occupation of said land at all times from the fifth day of April, 1858, claiming the same as their own.

It is further found that Hill died intestate on the twenty-fifth day of December, 1906; that on the twenty-sixth day of January, 1907, the superior court duly appointed Isabella

Hill, widow of said Stephen Hill, administratrix of his estate.
Letters of administration were duly issued to her and she con-
tinued to act as administratrix until December 26, 1907, when
she died. During the period of her administration said Isa-
bella Hill had caused to be prepared and filed her inventory
and appraisement of said estate in which the 236.18 acres
were described as separate property of the estate and the re-
mainder of said estate as community property. On April
24, 1907, said Isabella Hill filed her petition praying that an
order be made setting apart to her a homestead out of the
said 236.18 acres. This petition is set out in full in the find-
ings. After alleging that there is no community property
belonging to said estate suitable for a homestead, it asks that
5.12 acres, a part of said tract of 236.18 acres, which is de-
clared to be the separate property of the decedent, be set
apart to her as a homestead. The court made its order set-
ting apart said 5.12 acres for the use of the family of decedent
during the life of Isabella Hill.

The appellants take the position that the finding that the
tract in controversy was the separate property of Stephen
Hill is to be treated as a conclusion of law, rather than as a
finding of fact. If, however, it be a finding of fact, they chal-
lenge the sufficiency of the evidence to support it. The re-
spondents, on the other hand, while opposing both of these
contentions, seek to support the judgment upon the additional
and independent ground that the order setting apart the
homestead for a limited period was an adjudication of the
separate character of the property out of which said home-
stead was carved, and that this adjudication, not having been
appealed from, became binding and conclusive against Isa-
bella Hill and those claiming under her. We do not find it
necessary to decide whether the order setting apart the home-
stead has the conclusive effect claimed, since we have reached
the conclusion that, regardless of this order, the finding that
the tract in question was the separate property of Stephen
Hill is a finding of fact and that it has sufficient support in
the evidence.

Whether certain property owned by a married person is
separate or community property is no doubt to be determined
by applying the rules of law laid down in the Civil Code to
the facts surrounding the acquisition of the property. So,

too, does the question whether a person is the owner of given property depend upon the application of rules of law to the facts shown.  But an allegation or finding that a person is the owner of certain property is none the less an allegation or finding of an ultimate fact.  (*Smith* v. *Acker,* 52 Cal. 217; *Murphy* v. *Bennett,* 68 Cal. 528, [9 Pac. 738]; *Gill* v. *Driver,* 90 Cal. 72, [27 Pac. 64].)  And the same considerations apply to an averment or finding that certain property owned by a married person is separate or community property.  The evidence from which this ultimate fact is determined is not to be set forth in a pleading nor need it be found by the court.

Here, then, we have a finding of the ultimate fact, together with findings of a number of probative facts.  If the probative facts found were such as to necessarily overcome the finding of the ultimate fact, the latter could not prevail.  (*Howeth* v. *Sullenger,* 113 Cal. 547, [45 Pac. 841].)  But the rule is well established in this state that "the findings of probative facts can be used to overcome an express finding of the ultimate fact only where the probative facts are inconsistent with the ultimate facts found, or where it appears that the trial court made the alleged finding of the ultimate fact simply as a conclusion from the particular facts found."  (*Corea* v. *Higuera,* 153 Cal. 451, 455, [16 L. R. A. (N. S.) 791, 95 Pac. 882]; *People* v. *McCue,* 150 Cal. 195, [88 Pac. 899], and cases cited.)  The probative facts in the findings which we have above outlined are not inconsistent with the conclusion that the property was the separate property of Stephen Hill. It is found, to be sure, that at the time of Hill's marriage, an undivided one-half of the property had been conveyed to Connick and that Hill did not acquire title from Connick until after his marriage.  Property acquired by the husband during coverture is presumed to be community property in the absence of a showing that it was acquired by gift, bequest, devise, or descent, or was purchased with his separate property.  But this presumption is rebuttable and there is no finding here that the purchase price paid by Hill to Connick was not his separate property.  Findings are to be so construed as to uphold the judgment (*Breeze* v. *Brooks,* 97 Cal. 72, [22 L. R. A. 257, 31 Pac. 742]; *Warren* v. *Hopkins,* 110 Cal. 506, [42 Pac. 986]), and we cannot, therefore, for the purpose of overthrowing the ultimate finding of the separate character of

the property in controversy, read into the findings one to the effect that the purchase money was community property.

The evidence regarding the acquisition of the land in question by Stephen Hill was not so precise and circumstantial as might have been expected had the transaction been more recent. At the same time, there was enough in the record to justify the court in drawing the inference that the one-half interest obtained by Hill from Connick was the separate property of the former. Although no formal deed of conveyance passed from Connick to Hill, we do not think the court was bound to view Hill's ownership as one acquired by adverse possession alone. While, under the findings, his claim did not ripen into a complete legal title until the lapse of the time required for gaining a title by prescription, the fact remains that he went into exclusive possession under a contract of purchase. Both parties, apparently, believed that a conveyance was not required, and the vendor made no further claim to the land. These circumstances, with the subsequent payment of the purchase price, were sufficient to make Hill the equitable owner as against Connick. In determining whether the property so acquired by him was separate or community property, regard should be had to his equitable *status* as purchaser, and not simply to the technical mode by which the legal title came to be vested in him.

At the time of Stephen Hill's marriage, he was beyond question the owner of an undivided one-half interest in the tract in dispute. He had then parted with the other half interest, having sold it to Connick for the sum of two thousand two hundred dollars, which, as Connick testified, was paid in installments. The money so realized by Hill was of course his separate property. In addition to his interest in this tract, Hill owned, at the time of his marriage, the timber upon another parcel of land, and was engaged in logging operations thereon. He and Connick farmed and cut timber upon the tract owned by them jointly, and, according to Connick's testimony, divided the profits equally. Hill's share, to the extent that it constituted the rents, issues, and profits of the one-half owned by him before marriage, was his separate property. (Civ. Code, sec. 163; *Estate of Pepper,* 158 Cal. 620, [31 L. R. A. (N. S.) 1092, 112 Pac. 62].) The repurchase from Connick took place some sixteen months after

Hill's marriage. At that time Hill had received from Connick two thousand two hundred dollars, and this sum, together with a part, at least, of the profits from operations on the land, was his separate property. No improbability is therefore involved in the conclusion that he had separate property sufficient to pay for the interest repurchased. One-half of the price paid by Hill to Connick was paid about ten months after the agreement of purchase, and the rest two months later. Connick did not know "where the money came from," and, in view of all the circumstances, it is at least as likely that it was Hill's separate property as that it was money acquired by the community during the marriage.

If this were all, the presumption in favor of the community character of the purchased land could probably not be said to have been overcome by the clear and satisfactory proof required in such cases. But we have, in addition, the sworn statement of the widow, in her application for a homestead, that the property was the separate property of Stephen Hill. There can be no question of the admissibility of this statement as a declaration against interest, operative against the appellants as successors to the right of the declarant. (Code Civ. Proc., sec. 1849; *Stanley* v. *Green,* 12 Cal. 148; *Ingersoll* v. *Truebody,* 40 Cal. 603; *Moore* v. *Jones,* 63 Cal 12, 16; *Duff* v. *Duff,* 71 Cal. 513, [12 Pac. 570] ; *In re Bauer,* 79 Cal. 304, [21 Pac. 759] ; see, also, *Donnelly* v. *Rees,* 141 Cal. 60, [74 Pac. 433].) Upon the same ground the widow's sworn statement, in the inventory filed by her, that the property was the separate estate of the decedent was evidence against her successors in interest. On the question of the admissibility of these declarations the case is precisely the same as *In re Bauer,* 79 Cal. 304 [21 Pac. 759]. And we think that, under the circumstances appearing here, the statements of the widow were entitled to considerable weight. They were formal averments, in proceedings deliberately taken by her. In each instance the declaration made was directly and materially antagonistic to her own interest. It related to a matter concerning which she in all probability had more accurate knowledge than any other living person. Certainly this twice-repeated solemn assertion was sufficient, in connection with the other facts shown, to justify the court in finding that the property was the separate estate of Stephen Hill.

The decisions in *Estate of Granniss*, 142 Cal. 1, [75 Pac. 324]; *Estate of Learned*, 156 Cal. 311, [104 Pac. 315], and *Estate of Claiborne*, 158 Cal. 648, [112 Pac. 278], relied on by appellants, do not support their contention that declarations by a decedent concerning the character of his estate are not evidence against those claiming under him. These decisions go no further than to hold that a statement in a will that certain property is separate or community is not controlling upon the court or the heirs, but that the character of the property is still to be determined by the manner of its acquisition. Nor is *Estate of Pepper*, 158 Cal. 620 [31 L. R. A. (N. S.) 1092, 112 Pac. 62], to be regarded as overruling the holding in *In re Bauer*, that declarations of the kind here involved are admissible in evidence and are entitled to consideration. The admissibility of declarations against interest by a decedent was recognized in that case. It was, however, held that no error had been committed in striking out evidence that the decedent had said that certain property "was or that he considered it" community property. From the record before the court it was a fair inference that the witness was not undertaking to repeat any statement of fact, but merely to testify to what had been said, professedly as an expression of opinion. In that view, it was proper enough to hold that the evidence was entitled to no weight. We do not think the opinion is to be construed as laying down the rule that evidence of a declaration that certain property is separate or community has no probative force because the declaration is of a matter of opinion, rather than of fact. If such were the effect of the holding in the Pepper case, we should now feel bound to declare our disapproval of that holding.

The judgment and the order appealed from are affirmed.

Angellotti, J., and Shaw, J., concurred.

We concur in the judgment for the reasons given in the Department opinion rendered herein.

Henshaw, J., Lorigan, J., and Melvin, J.

"Department Two.    April 7, 1913.

HENSHAW, J.—"This is an appeal by the heirs of Isabella
Hill from the decree and from the order denying their motion
for a new trial in a proceeding to determine heirship and
distributive rights in the estate of Stephen Hill, deceased.
Isabella Hill and Stephen Hill were husband and wife.
Stephen Hill died first intestate and without issue. His
wife Isabella Hill for a time administered his estate when
she too died intestate. The sole matter of controversy is
whether a tract of two hundred and thirty-six acres of land
left by Stephen Hill is his separate property or the property
of the community. The court made full findings of probative
facts and then, both in the form of an ultimate finding of
fact and in the form of a conclusion of law held the land to
be the separate property of Stephen Hill. Appellants intro-
duced evidence to show, and the court found, that in 1864
Stephen Hill, then unmarried, was the sole owner of the
property. While still unmarried he executed and delivered
to John S. Connick (one of the heirs at law of Isabella Hill)
a deed conveying to Connick an undivided one-half of the
land; Connick took possession with Hill of the land and re-
mained in the joint occupancy and possession with Hill until
October 15, 1866. Hill married his wife Isabella on June 1,
1865. In October, 1866, Connick agreed to sell and Stephen
Hill agreed to buy Connick's one-half interest in the prop-
erty. Thereupon Connick delivered up the possession of the
property to Stephen Hill and returned to Stephen Hill the
deed to the property that Hill previously had made to him.
This deed had never been recorded. No written or other
conveyance of any kind was then or thereafter made by Con-
nick to Hill and no other act of any kind was done to perfect
the conveyance by Connick to Hill other than that thereafter
Hill retained exclusive possession of the land and in August,
1867, paid Connick one thousand one hundred dollars, and
about two months thereafter paid him another one thousand
one hundred dollars, thus completing the payments to Con-
nick of the purchase price. The findings are silent as to
whether or not the money so paid was itself the separate
property of Hill, and upon this appellants argue that as the
title in Connick could not have been transferred by the mere

redelivery and destruction of the unrecorded deed, it follows
that the only title which Hill did acquire to this undivided
half was a title by adverse possession, which adverse posses-
sion was initiated while he was married to Isabella Hill and
was consummated during such marriage. The necessary con-
clusion, it is argued, to be drawn from a title thus obtained is
that the undivided one-half of the land was community prop-
erty. But the court made other findings determinative of the
controversy. It found that during the administration by Isa-
bella Hill of her husband's estate she subscribed to an inven-
tory and appraisement which declared the two hundred and
thirty-six acres to be the separate property of her husband,
and other real estate and personal property to be community
property; that thereafter she applied for a homestead to be
carved out of this separate property, declaring that none of
the community property was suitable for such homestead,
and that she and her husband had resided upon the separate
property, and that she, the widow, had continued there to re-
side after his death, and she prayed the court 'to set aside to
her a homestead out of the above described real property
which is the separate property of the decedent, including the
said dwelling thereon.' This the court did in accordance with
the allegations and prayer of the petition, and its decree so
doing was never appealed from, vacated, or annulled. This
decree so setting aside the homestead was not only a judg-
ment *in rem* binding upon all parties (*Kearney* v. *Kearney*,
72 Cal. 591, [15 Pac. 769]; *Hanley* v. *Hanley*, 114 Cal. 694,
[46 Pac. 736]), but it was a decree invited by Isabella Hill,
and therefore in an especial sense binding upon her, her heirs
and her privies. She was not merely bound, as was all the
world bound, because it was a proceeding *in rem*, she was
bound because she had solicited and demanded a right from
the estate of her husband based upon her declaration as to the
character of the land. Having invited this judgment and
having accepted the fruit of it, it needs no authority to show
that she is bound by it. Indeed, during her lifetime she never
questioned it. It will not do to argue that the character of
the property as separate or community property was not in-
volved in the homestead proceeding and decree. It was not
only directly involved but the court could not with propriety
have entered the decree which it made excepting under the

determination which it also made, that the property was the separate property of Stephen Hill. 'In all the cases,' says Greenleaf (1 Greenleaf on Evidence, sec. 543), 'the same principle prevails, and the judgment, acting *in rem,* shall be held conclusive upon the title and transfer and disposition of the property itself, . . . by whomsoever the latter may be questioned; and whether it be directly or indirectly brought in question.' (See, also, *Estate* of *Harrington,* 147 Cal. 124, [109 Am. St. Rep. 118, 81 Pac. 546].)

"It results then that the findings show that the question of the character of this property has been adjudicated and that this adjudication raises an estoppel against the pretensions of the heirs of Isabella Hill. It is, of course, no answer to this to cite such cases as *Estate* of *Granniss,* 142 Cal. 1, [75 Pac. 324], and *Estate* of *Claiborne,* 158 Cal. 648, [112 Pac. 278], which contain no more than the axiomatic declaration of this court to the effect that the declaration in a testator's will to the effect that any given piece of property is separate property or is community property is not controlling, and that the character of the property will be determined by the nature of its acquisition.

"It follows herefrom that the decree and order appealed from were rightly made and given and they are therefore affirmed.

"We concur: Lorigan, J., Melvin, J."