[Civ. No. 20193. Second Dist., Div. One. July 28, 1954.]

Estate of SUSAN ANN BLAIR, Deceased. ALFRED GRANVILLE BLAIR et al., Appellants, v. PHOEBE L. BONNEN et al., Respondents.

Louis Thomsen for Appellants.

Roy B. Woolsey for Respondents.

DRAPEAU, J.—Alfred G. Blair and Susan Ann Blair were married June 30, 1915. Each of them had been married before, their first spouses having died. And each of them owned separate property at the time of their marriage.

The husband and wife lived in California until Mr. Blair died in 1950, and Mrs. Blair in 1951. She left no will. And it may fairly be inferred from the record that from the time of her husband's death she was incompetent to make a will.

Mrs. Blair's estate was appraised at $255,857.90. All of her estate came from property that had been vested in joint tenancy in her and her husband.

Mr. Blair's estate, not including the joint tenancy property, was appraised at $70,074.63. Mrs. Blair was the residuary beneficiary under Mr. Blair's will.

Mr. Blair was an insurance broker. He also bought, subdivided, and sold real property. He managed extensive property affairs; his wife signed with him all notes, mortgages, and deeds in financing, refinancing, and selling their many properties.

Some of Mr. Blair's investments were good, some were not so good, and some were bad. Their financial bark almost capsized in the stresses of the depression of 1929 and in litigation involving one of their properties. But the value of property in joint tenancy when Mr. Blair died would indicate that, over all, his transactions resulted in considerable profit.

After Susan Ann's death two children by Mr. Blair's first wife, petitioned to determine heirship.

Their petition was heard by the superior court. The judge found that all of the property in Susan Ann's estate was her separate property, and adjudged that it should go to her next of kin,—sisters, nephews, and nieces. Petitioners appeal from the judgment.

Testimony was taken in the trial court for several days. Many exhibits were received in evidence. On appeal the case has been extensively briefed and argued.

■ The issues are important to Mr. Blair's two children, for under the provisions of section 228 of the Probate Code they are entitled to inherit from Susan Ann Blair all of her estate which had its origin in community property. On the other hand, if the estate was Mrs. Blair's separate property then under section 225 her collateral heirs are entitled to it. (*Estate of Abdale,* 28 Cal.2d 587 [170 P.2d 918]; and see 34 Cal.L.Rev. 766.)

Petitioners contend that there is no evidence in the record

to support the finding; that the whole estate was in its origin community property of the spouses.

After the marriage Mrs. Blair sent her husband to New Jersey to liquidate all of her property there. This was done, and the proceeds were deposited in a joint bank account of Mr. and Mrs. Blair here in California. Community funds were also deposited in the same account. Money was drawn from the account to finance investments in property by Mr. Blair.

As stated, following the depression of 1929 the Blairs' financial affairs came to a low ebb. Practically everything they owned was in property near Carlsbad, California, called the Red Apple Inn, and in subdivision property in the Arroyo Seco District near Pasadena.

Title to these properties was in joint tenancy. And from these properties may be traced the joint tenancy property owned by husband and wife at the time of Mr. Blair's death.

One of the witnesses for the collateral heirs of Mrs. Blair testified that Mr. Blair said he purchased the Red Apple Inn with Mrs. Blair's money. In trying to borrow money from this witness' husband, Mr. Blair said, ". . . you know, Susie may lose all of her property. She may lose the Red Apple Inn, and she may lose her Pasadena property."

Another witness, a former attorney, testified that Mr. Blair said he had taken all of Mrs. Blair's money and put it into the Red Apple Inn, and properties elsewhere.

Another witness testified that, when additional capital was needed for the Red Apple Inn, Mr. Blair said, "I haven't any money. Mrs. Blair has put an awful lot in it, and whether I can get her to put in any more or not, I don't know."

Another witness testified that Mrs. Blair, in the presence of Mr. Blair, said she had put her money into the Red Apple Inn.

Three of Mrs. Blair's sisters testified.

One sister said that, back in the twenties, in the presence of Mr. Blair, Mrs. Blair said she wished she had some of her money to spend; that her husband had it all, around $50,000, invested.

Another sister testified that Mr. Blair told her he had invested some of Mrs. Blair's money in Pasadena acreage in the arroyo.

Another sister testified that in 1928 Mr. Blair showed her the arroyo property, and said, "I have invested Susie's money here, some of Susie's money here."

Finally, after Susan Ann had had her first stroke, Mr. Blair said to her that he had made his will. She said to him that she thought she ought to make a will too. He said to her, "You don't need to make a will, because, if anything happens to you, *your* property will go to me." (Emphasis added.)

Petitioners argue that the substance of all of the testimony is that Susan Ann Blair put some or all of her money into some of the properties held in joint tenancy; that there is nothing in the record to show how much money or other separate property she put into any of the properties, nor when she may have done so; that the evidence does not show that specific property was acquired with identified separate property funds; that there is nothing in the testimony to show the total cost of the properties; hence it is impossible to determine what proportionate, or any, separate property interest she may have had in any of the properties.

This argument, however, goes to the weight, value, and effect of the evidence, and to the inferences to be deduced therefrom. There is no doubt, as petitioners argue, that the oral declarations ascribed to Mr. Blair come within the category of "the weakest kind of evidence known to the law." (*Herbert* v. *Lankershim,* 9 Cal.2d 409, 472 [71 P.2d 220].) But such declarations were evidence. (Code Civ. Proc., §§ 1853, 1870; 31 C.J.S. Ev. p. 1105, § 327; *Estate of Hill,* 167 Cal. 59 [138 P. 690]; *Moore* v. *Spremo,* 72 Cal.App.2d 324 [164 P.2d 540].) And it was for the trier of fact to give to that evidence the weight and effect which he concluded it entitled to.

█ It needs no extensive citation of authority to the effect that in reviewing an attack upon a judgment, this court may consider only whether there is substantial evidence to support the finding upon which it is based. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].) From a review of the voluminous record in this case, this court is required to find that the finding of the trial court is supported by substantial evidence.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied August 17, 1954, and appellants' petition for a hearing by the Supreme Court was denied September 16, 1954. Schauer, J., was of the opinion that the petition should be granted.