[Civ. No. 20509. Second Dist., Div. Two. Feb. 17, 1955.]

Estate of HARVEY R. CUMMINS, Deceased. OSA M. CUMMINS, Respondent, v. JACK A. CUMMINS et al., Appellants.

Benjamin & Kronick for Appellants.

J. George Bragin for Respondent.

FOX, J.—This appeal is solely from that portion of a judgment in a proceeding to determine heirship which decrees that all property in the estate of Harvey R. Cummins, deceased, not specifically designated as the decedent's separate property, is the community property of said decedent and his widow, Osa M. Cummins, in whom title to the said property is vested subject to administration.

The controversy herein finds arrayed on one side the widow of the decedent, who died intestate and without issue; on the other are appellants, who are the brothers and sisters and the issue of deceased brothers and sisters of Harvey R. Cummins. The principal object of their conflict is to de-

termine the status of certain real property, and the income derived therefrom. The background of the dispute is as follows:

In August, 1943, the decedent, a medical doctor then serving as an officer in the United States Army, became acquainted with Osa Massen, a motion picture actress who came from Denmark and was naturalized in 1943. Two months after their meeting, Osa commenced an action for divorce against her husband, Allan Hersholt. She obtained an interlocutory judgment in October, 1943. A final decree was entered in August, 1945. Dr. Cummins and Miss Massen were married in February, 1947.

Prior to their marriage, Dr. Cummins and Osa, each of whom possessed substantial means of their own, were interested in investing in real estate and spent considerable time looking for a suitable purchase of income property. In October, 1945, they bought an unimproved lot located at 337 South Beverly Drive, Beverly Hills, California, for the purpose of erecting a medical building. The deed of conveyance was drawn to vest the title of an undivided one-half interest in Osa Massen, a single person and the other undivided one-half interest in Harvey R. Cummins, a single person. The deed was duly recorded to show the interests thus described and remained in this form until Dr. Cummins died.

During the year 1946, both Dr. Cummins and Osa contributed substantial amounts of money to finance the construction of the medical building, which was finished in September, 1946. The exact sums furnished by each from their private resources is not clearly indicated. Irving Leonard, an accountant who prepared income tax returns for Dr. Cummins and Osa subsequent to their marriage and who, in about May, 1947, set up books of account for the building, testified that Dr. Cummins informed him that Osa's cash investment was $40,000, and his own cash investment was $15,479. Mr. Leonard testified that these figures were entered in the ledgers of the books established to handle the building accounts. Appellants' brief refers to documentary evidence which suggests Osa's cash investment was $22,700 and that of Dr. Cummins $29,300. The balance of the funds required to complete the building came from a bank loan of $45,000 and from $22,000 in rentals advanced by prospective lessees of office space. About six weeks after the building was completed, a bank account was opened to handle receipts and

disbursements connected with the building. The account was opened in the form of a partnership designated as the 337 South Beverly Drive Building, with Harvey R. Cummins and Osa Massen authorized to draw checks against the funds on deposit.

From the inception of the acquaintance of Osa and Dr. Cummins, the latter was in poor health. Although they were romantically interested in each other, Dr. Cummins was reluctant to marry because of his physical condition. Finally, Dr. Cummins learned definitely that he was the victim of a grave ailment, that the prognosis was poor, and that he lived in the shadow of impending death. During conversations with Osa concerning their future, he stated that his failing health made it inadvisable for them to marry, since their marriage would be short-lived. In the fall of 1945, about the time they purchased the lot, Osa and the doctor decided to marry. In about October or November of that year, they discussed the status of the property they had bought in the light of their contemplated marriage and Osa testified it was agreed that they would hold it as community property. She further testified Dr. Cummins explained the meaning of community property to her and that they verbally agreed that everything they had should be community property after their marriage. She reiterated such testimony under cross-examination. Several weeks after the marriage, Osa testified to a conversation in her presence between Dr. Cummins and Mr. Leonard concerning the 1946 income tax returns. She quoted Dr. Cummins as saying: "Well, next year it won't be so complicated, now we are married, because we have agreed everything we own is community property."

Mr. Leonard, who prepared the tax returns for Dr. and Mrs. Cummins, did the accounting for their medical building, and had frequent business and social association with decedent, testified that in a discussion of the 1947 tax liability with Dr. Cummins, the latter told him he and Osa "owned everything together." and employed the term "community" in relation to their property. He testified that Robert Campbell, of the Treasury Department, had occasion to audit the Cummins' 1947 tax returns in July, 1950, and Campbell discussed these returns with Dr. Cummins and Mr. Leonard. Mr. Campbell's report, following these discussions, contains the statement that "All income is considered community." Dr. Cummins, according to Leonard, was apprised of this. Leonard also testified that Dr. Cummins specifically told him

that everything after his marriage would be reported as community property.

Bret Beilin, who handled the insurance on the medical building, testified he discussed life insurance with Dr. Cummins after his marriage, during which time the question of mortgage protection arose. Dr. Cummins advised him he was uninsurable but was unconcerned about the mortgage because "they were making every effort to pay off the mortgage, and that they held the property in community property, and that being so, everything would revert to his wife and he was not worried about taking any more life insurance." Mr. Vanderzee, a loan officer of the bank which provided the original loan on the building, testified that on one occasion he inquired of Dr. Cummins why he was making such large payments on the mortgage. Dr. Cummins replied that he wanted to liquidate the obligation as rapidly as he could, so that it would not be a burden on his wife in the event anything happened to him. Dr. Cummins also stated: "What Osa owned was his and vice versa; in other words, it was a question of husband and wife."

Mr. Bragin, counsel for Osa in the case at bar, testified to a conversation in 1949 with Dr. Cummins relative to the making of a will. Dr. Cummins informed Mr. Bragin that everything he and his wife owned was community property and stated he would like to arrange it so everything they had would be placed in trust, so she would be protected after his death from persons attracted to her by her wealth. Mr. Bragin advised the doctor that he could not subject Osa's community interest in the property to a trust without her consent. Later that year, Dr. and Mrs. Cummins consulted Mr. Bragin with respect to a lawsuit that threatened Dr. Cummins in connection with the sale of their building. Mr. Bragin testified he advised them that so far as the purported sale was concerned, the would-be purchaser could not sue for specific performance, since Osa had not signed the agreement to sell the building, which was community property.

Copies of the income tax returns signed and filed by Dr. and Mrs. Cummins after their marriage were received in evidence. These returns disclose that all their income, including that from the building, was reported as community property. Partnership returns were also filed for state and federal income tax purposes covering the medical building in which Dr. and Mrs. Cummins are listed as each having a 50 per cent interest. In this connection, Mr. Leonard testified that such

returns were prepared because it was advantageous, taxwise, to operate the medical building as a partnership. He stated that the medical building books of account were set up in partnership format, with a 50 per cent capital account for each of the parties, as a matter of convenience in the handling of the operation. However, it is significant that Dr. Cummins used the funds from the medical building in the fashion of a husband managing the community estate. The records show that Dr. Cummins was the only one who drew money out of the partnership account. This sum amounted to $49,000 and was used for the family's living expenses and to meet other financial needs of either the doctor or his wife. Each of the parties also maintained relatively small bank accounts in their separate names and carried separate stock brokerage accounts.

One of the appellants, Simon Cummins, decedent's brother, testified he had been shown a written partnership agreement entered into by Dr. Cummins and Osa prior to their marriage which provided that if either partner died, the survivor should have the prior right to purchase the one-half interest of the deceased partner. Osa denied the existence of such an agreement. No copy of any partnership agreement was ever located.

At the time of his death, Dr. Cummins had standing in his name alone two commercial checking accounts and a deposit in a savings and loan association, all of which were opened after his marriage. There was evidence that prior to his marriage Dr. Cummins owned stocks which he carried in an account with a New York stock brokerage firm. During the existence of this account, which was closed on April 4, 1951, sums of money realized from these stocks were transferred to Dr. Cummins. Also standing in Dr. Cummins' name when he died were 1,000 shares of Citizens Underwriters Corporation stock, appraised at $4,000. These were purchased subsequent to the marriage with funds drawn from the medical building account and charged to Dr. Cummins' capital account. Osa testified this was bought and carried in Dr. Cummins' name because she carried no insurance, and it was felt if she died first, Dr. Cummins would have ready cash with which to pay inheritance taxes or other bills. Also outstanding when Dr. Cummins died was the balance owing him on a promissory note given by Irving G. Cummins prior to the marriage.

The court found to be separate property of decedent the money in the two checking accounts and the savings and loan

deposit last mentioned, the 1,000 shares of Citizens Under-writers Corporation stock, and the balance owing on the prom-issory note. It found all the other property in the estate to be community property. These findings were embodied in the judgment and order of the court determining heirship. The appeal is taken only from that part of the judgment decreeing that all property in the estate not specifically designated as the separate property of decedent is community property, and that title thereto is vested in Mrs. Cummins as owner, subject to administration.

Appellants' argument is directed primarily to evidence relating to the medical building and the income there-from. They contend that there is no substantial evidence to establish that an oral antenuptial agreement had been en-tered into or consummated by decedent and his wife which transmuted their separate property into community property. In support thereof, they urge as controlling the fact that the original deeds were never changed, that the operation of the medical building was set up as a partnership with capital accounts allocated to the parties and some charges entered on decedent's account, that partnership income tax returns were filed, and certain other evidence carefully selected from among the oral and documentary testimony we have recited which they assert lends color and credence to their position. Such argument, of course, is properly addressed to the trier of facts, as the arbiter of their persuasive force; but this is a court of review only, and since, as will appear, there is evi-dence in the record giving substantial support to the find-ings attacked, we are not at liberty to disturb such findings. (*Estate of Kane,* 80 Cal.App.2d 256, 266 [181 P.2d 751].) The principles controlling appellate review in cases of this character are cogently phrased in *Estate of Trelut,* 26 Cal.App. 2d 717, 723 [80 P.2d 147] : ''The sufficiency of the evidence is generally a matter for the trial court or jury, and the find-ings or verdict will not be lightly set aside. Following the general rule, a finding of a trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evi-dence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. [Citation.]'' Address-ing itself to the same point, it was stated in *Estate of Duncan,* 9 Cal.2d 207, 217 [70 P.2d 174] : ''Upon this appeal, there-fore, contestant is confronted with the added task of estab-lishing the fact that there is no real conflict in the evidence

and an entire failure of any substantial evidence to support the conclusion of the trial court, for, of course, the question of the sufficiency of the evidence is primarily a question for the trial court to determine, and if there be a conflict of the evidence, the finding of the lower court is not open to review on appeal.'' To prevail, appellant must show that there was no conflict in the evidence and that such evidence, as a matter of law, lends itself to no other reasonable inference than that the disputed portion of the property was the separate property of Dr. Cummins. The record as made presents a formidable barrier against the appellants' contention ''that the documentary evidence adduced in this matter clearly overrides the oral testimony'' and requires a reversal of that portion of the judgment appealed from.

The law governing this aspect of the case is reasonably clear. ■ In general, a husband and wife may by simple agreement convert their separate property into community property, and persuasive evidence of such an agreement will rebut any presumption arising from the form in which title is held. (*Kenney* v. *Kenney*, 128 Cal.App.2d 128, 135 [274 P.2d 951] ; *Stice* v. *Stice*, 81 Cal.App.2d 792, 798 [185 P.2d 402] ; *Estate of Raphael*, 91 Cal.App.2d 931, 939 [206 P.2d 391].)
■ Thus, a husband and wife who own separate property prior to their marriage, may, by an antenuptial agreement, transmute such property into the community property of the spouses. (*Handley* v. *Handley*, 113 Cal.App.2d 280, 283 [248 P.2d 59] ; *Martin* v. *Pritchard*, 52 Cal.App. 720, 724 [199 P. 846] ; *Estate of Wahlefeld*, 105 Cal.App. 770, 775-776 [288 P. 870] ; *Vieux* v. *Vieux*, 80 Cal.App. 222, 226-227 [251 P. 640].) Such an agreement may be oral if it is executed subsequent to the marriage, as disclosed by acts and conduct in confirmation of the prenuptial agreement. (*Handley* v. *Handley, supra*; *Kenney* v. *Kenney*, 220 Cal. 134, 136 [30 P.2d 398] ; *Estate of Piatt*, 81 Cal.App.2d 348, 351-352 [183 P.2d 919] ; *Martin* v. *Pritchard, supra*.) As indicated in the cases last cited, the basic issue resolves itself into an inquiry as to whether there is sufficient evidence to justify a finding, express or implied, that such preconjugal agreement existed and that it was consummated and confirmed during the marriage.

Contrary to appellants' assertion, there is no lack of such evidence. The court obviously credited Osa's testimony that late in 1945, when she and Dr. Cummins decided upon marriage, they agreed to hold the medical building as community

property. That this agreement was fulfilled and carried into effect appears from the testimony of various witnesses, from documents introduced and from other significant circumstances, direct and indirect. ■ We need do no more than here adumbrate such evidence. From Dr. Cummins' accountant, from an attorney whom he consulted, from his insurance agent and from a loan officer of his bank there came convincing testimony of declarations made by the decedent to·the effect that he and Osa held their property in community. Statements substantially similar to those used by Dr. Cummins have been relied on in numerous cases to uphold a finding of an agreed oral transmutation of property from separate to community. (*Kenney* v. *Kenney,* 220 Cal. 134, 136 [30 P.2d 398] ; *Handley* v. *Handley,* 113 Cal.App.2d 280, 284 [248 P.2d 59] ; *Stice* v. *Stice,* 81 Cal.App.2d 792, 798 [185 P.2d 402] ; *Estate of Raphael,* 91 Cal.App.2d 931, 937, 938 [206 P.2d 391].) In the years following their marriage, Dr. and Mrs. Cummins signed and filed income tax returns declaring that their collective income, from all sources, was community property. While not conclusive, such a course of conduct has frequently been regarded as evidencing an existing agreement to hold property in community. (*Handley* v. *Handley, supra; Estate of Raphael, supra; Frymire* v. *Brown,* 94 Cal.App.2d 334, 339 [210 P.2d 707] ; *Heck* v. *Heck,* 63 Cal.App.2d 470, 475 [147 P.2d 110].) On one of the returns appears a notation, following the totaling of the aggregate income, that "one-half community income to spouse in the amount of $10,482.42." Also, on the report of the United States Treasury auditor who discussed the 1947 returns with Dr. Cummins, appears the comment that "all income was considered community." During the marriage, Dr. Cummins used the income from the building to meet the living expenses of the parties without any charges against the accounts. Taking all this evidence in the light most favorable to the respondent, as we are compelled to do, we are satisfied that it abundantly sustains the court's finding that the property in question was community-owned at the time Dr. Cummins passed away. It was a question of fact whether the agreement of transmutation of separate into community property had been clearly established as a *fait accompli* from an inquiry into the circumstances surrounding the transaction. (*Marvin* v. *Marvin,* 46 Cal.App.2d 551, 557 [116 P.2d 151] ; *Estate of Raphael, supra,* pp. 939, 940.)

■ Evidence with respect to the unaltered condition of

the title to the property, the partnership operation of the building, and the like, relied upon by appellants, merely shows the existence of a conflict which the trial court resolved against them. The court could reasonable regard as perfectly natural and consistent with their community ownership of the medical building that a husband and wife should use the form of a coequal business partnership as the medium by which to operate such a community asset. (See *McCall* v. *McCall,* 2 Cal. App.2d 92, 94 [37 P.2d 496].) Mr. Leonard testified that this was a convenient and tax-advantageous method of running such a business. Furthermore, the fact that the parties listed themselves as equal owners of the partnership does not inevitably require an interpretation that such partnership interest was separate in character. Rather, under the circumstances here present, it lends cogent support to an inference that this was additional confirmation of the oral agreement. For, after the purchase of the lots in which each had an undivided one-half ownership, the parties did not invest equal amounts toward the cost of constructing the building. Yet, whether we accept appellants' assertion that Dr. Cummins invested more than Mrs. Cummins in the building, or respondent's contention that she invested 72 per cent against 28 per cent by the decedent, the fact remains that regardless of such unequal investments, the partnership books set up after the marriage show, in conformity with the claimed agreement, that each had an equal interest in the enterprise, regardless of the amount they actually invested.

The whole tenor of appellants' argument is that we should discredit the evidence offered by respondent and her witnesses, ignore the facts and circumstances tending to establish the existence of a confirmation and execution of the oral prenuptial agreement to treat the property as community, reappraise the evidence in their favor, and draw inferences contrary to those drawn by the trial court. That, however, lies outside the province of this court. (*Gillespie* v. *Ormsby,* 126 Cal.App.2d 513, 529 [272 P.2d 949].) Also lacking in force is appellants' claim that the evidence adduced lacks the degree of probative force required in cases of this character. The answer to this argument is contained in the following quotation from *Simonton* v. *Los Angeles T. & S. Bank,* 205 Cal. 252, 259 [270 P. 672]: ''The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily, as in other cases, a question for the trial court to determine,

and if there is substantial evidence to support the conclusion reached below, the finding is not open to review on appeal. [Citations.]''

■ Appellants next argue that the court erred in admitting the testimony of Mr. Leonard, Mr. Beilin and Mr. Bragin relating to statements made by Dr. Cummins that the medical building was the community property of the decedent and his wife. This evidence, however, was correctly received as declarations constituting admissions against interest. (Code Civ. Proc., § 1870, subd. 4; *Estate of Blair,* 126 Cal.App.2d 759, 762 [272 P.2d 866]; *Estate of Smead,* 219 Cal. 572, 575 [28 P.2d 348]; *Estate of Hill,* 167 Cal. 59 [138 P. 690].) However weak such evidence may be standing alone, it is for the trier of fact to accord it the weight and effect to which he deems it entitled in view of the particular circumstances disclosed by the record. (*Estate of Blair, supra.*) Likewise lacking in merit is appellants' contention that if decedent already owned a one-half interest in the medical building, the declarations he made that it was community property "is certainly not against his interest, as it takes nothing away from him." The fallacy of such argument may be demonstrated by a simple hypothesis: assuming Mrs. Cummins had successfully maintained a suit for divorce based on extreme cruelty, the court, in its discretion, could have awarded her the entire building if found to be community property. Were any interest therein determined to be the separate property of Dr. Cummins, no such award could be made. We need not multiply illustrations, of which many are at hand, to indicate that the declarations were admissible under the authorities last cited.

Appellants urge that the material findings of fact and conclusions of law are not supported by the evidence and are in irreconcilable conflict. In this connection, they also assert the findings of fact as to the character of the property are actually conclusions of law. In this they are mistaken. ■ "A finding that certain property owned by a married person is separate or community is a finding of an ultimate fact. [Citations.] The evidence from which this ultimate fact is determined need not be found by the court. [Citations.]'' (*Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 129 [264 P.2d 626].) Nevertheless, it is argued that paragraph 4 of the findings, in which it was found that certain bank accounts, 1,000 shares of stock, and the balance due on the promissory note, were the separate property of decedent, is

inconsistent with the finding in paragraph 5 that all other property in the estate was community property. Respondent's brief purports to show that there is no inconsistency and asserts it merely reflects the trial court's conviction that the agreement of transmutation actually covered only the medical building. ■ However, in view of the fact that only that part of the judgment relating to the community property has been appealed from, and since the sufficiency of the evidence to support the findings on which that part of the judgment is based has been amply demonstrated, we need not concern ourselves with other findings not essential to the part of the judgment appealed from. As stated in *Jones v. Pleasant Valley Canal Co.*, 44 Cal.App.2d 798, 805 [113 P.2d 289] : ''The ultimate fact to be found, however, is as to the respective rights of the parties, not as to how those rights were acquired. The trial court having arrived at the ultimate fact, any apparent conflict in the findings is immaterial; the judgment being supported by findings based on evidence sustaining those findings, the others will be disregarded. [Citations.]'' ■ It is fundamental that if a judgment is supported by findings which are amply sustained by the evidence, questions relative to other findings become immaterial upon appeal and may be disregarded. (*Logan* v. *Forster*, 114 Cal.App.2d 587, 602 [250 P.2d 730]; *American Nat. Bank* v. *Donnellan*, 170 Cal. 9, 15 [148 P. 188, Ann.Cas. 1917C 744]; *Moore* v. *Mosher*, 88 Cal.App.2d 324, 325 [198 P.2d 714].) Furthermore, no one has challenged the sufficiency of the findings as to the separate property of the decedent and no one has appealed from that part of the judgment based on those findings. The judgment as to the extent of the community property is fully supported by the evidence. ■ Any possible error the court might have made, therefore, was in his findings as to separate property. But appellants are not aggrieved thereby, since it redounds to their advantage. Under well-settled principles they are in no position to complain. (*Knapp* v. *Knapp*, 23 Cal.App. 10, 14 [136 P. 719]; *Moss* v. *Underwriters' Report, Inc.*, 12 Cal.2d 266, 273 [83 P.2d 503]; *Collier* v. *Landram*, 67 Cal.App.2d 752, 758 [155 P.2d 652]; *Morgan* v. *Veach*, 59 Cal.App.2d 682, 694 [139 P.2d 976].)

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.