[Civ. No. 2313. Third Appellate District.—May 23, 1921.]

## CHARLES MARTIN, Appellant, v. J. D. PRITCHARD, Respondent.

[1] CONTRACT—EXCHANGE OF LAND — COMMUNITY PROPERTY — SUFFICIENCY OF EVIDENCE.—In this action to recover damages for breach of a contract to exchange land, the evidence supports the finding that the property involved was the community property of defendant and his wife.

[2] HUSBAND AND WIFE—CHANGE OF CHARACTER OF PROPERTY—CONTRACT.—A husband and wife may by contract change the character of their property from community to separate, or they may transmute the separate property of either into community property.

[3] ID.—CONTRACT PRIOR TO MARRIAGE—CHANGE OF CHARACTER OF PROPERTY.—Separate property of either husband or wife may be transmuted into community property by contract made prior to and in anticipation of marriage.

[4] ID.—STATUTE OF FRAUDS—PERFORMANCE OF CONTRACT BY ONE PARTY—EFFECT OF.—A contract made prior to and in anticipation of marriage transmuting separate property into community property should be in writing, but where the contract has been fully executed by one party, the case is taken out of the statute, and the same is not assailable by the parties thereto or by third parties on the ground that it was not in writing.

[5] CONTRACT—EXCHANGE OF LAND—ACTION FOR BREACH—PLEADING—BAD FAITH.—Where in an action for damages for breach of a contract to exchange lands bad faith is relied upon, it must be pleaded.

[6] ID.—INSUFFICIENT ALLEGATION OF BAD FAITH.—An allegation in such an action that defendant refused to perform his contract "without any just reason or excuse" is not a sufficient allegation of bad faith on the part of the defendant in not informing plaintiff that his wife had some interest in the land.

[7] COSTS—NOMINAL DAMAGES.—A judgment for nominal damages does not carry costs. (Opinion of supreme court on denial of hearing.)

[8] APPEAL—NOMINAL DAMAGES—REVERSAL.—A judgment for a defendant in an action *ex contractu* for damages where it is established that a plaintiff is entitled to nothing more than nominal damages will not be reversed on appeal. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hugo K. Asher, Bradley & Bradley and Philip S. Ehrlich for Appellant.

E. I. Feemster and Middecoff & Feemster for Respondent.

FINCH, P. J.—Plaintiff sued to recover damages alleged to have been caused by the defendant's breach of contract to exchange twenty acres of land in Tulare County, together with farming implements and three horses, for plaintiff's cottage and two flats in Berkeley. Judgment was rendered in favor of the defendant and the plaintiff appeals therefrom.

The complaint alleges the execution of the contract on August 15, 1917, performance by the plaintiff and tender of deeds to the Berkeley properties, and that the defendant, "without any just reason or excuse," refused to make the exchange. The complaint further averred that the clear value of the Berkeley property was $4,500 and that of the Tulare property $9,500, and prayed for damages in the sum of $5,000, the difference in value. No other damages were claimed. The defendant admits the making of

the contract and its breach, but denies that he refused to make the exchange "without just reason or excuse." He admits that the value of the Tulare property was $4,000 more than that of the Berkeley property. The court found the difference in value between the two properties to be $4,000; that the defendant refused to make the exchange, but that his refusal was not "without just reason or excuse"; that when he signed the contract and long prior thereto he was married to Lena L. Pritchard; that the Tulare property was the community property of the defendant and his wife; that the contract was made without the knowledge or consent of the wife and that she did not know of the defendant's intention to enter into the contract or that he was contemplating an "exchange of said property for any other properties"; that when informed of such contract she refused to be bound by it; that she has at all times refused to join in the conveyance of the property to the plaintiff and that immediately after being informed of the contract she notified the plaintiff that she would not join in a conveyance of the property and threatened legal proceedings to prevent the exchange; that the defendant was willing and ready to make the exchange and would have done so but for the objections and threatened legal proceedings of his wife; and that the defendant was not guilty of bad faith in refusing to comply with his contract.

The evidence is not clear as to when and how the defendant acquired the Tulare property, but it appears that he purchased it under contract not later than the year 1907; that at the time of the purchase he paid thereon $12.50 an acre and was to pay the remainder in installments of $10 a month, the total purchase price not being shown; that at some time thereafter the property was conveyed to him and in turn deeded to his mother on conditions not disclosed, and that, after he had fulfilled those conditions, the property was conveyed to him about a month prior to his marriage to his present wife; that in the year 1907 the defendant built a four-room house on the land at a cost of $400 or $500 and made other improvements; that in the year 1908 the defendant planted five acres to oranges and twelve acres two years later.

The defendant and his wife were married in October, 1911. In the latter part of 1910, in contemplation of the

marriage, the defendant, his present wife, and her parents
came to an agreement that the parents would advance cer-
tain moneys to the defendant and his wife for the operation
and improvement of the place with the understanding that
the wife was to have an interest therein.  The defendant
testified that ''it was a matrimonial partnership, that is, it
was a joint proposition, that whatever we were interested
in, we would be interested in together, we would take
all things into account.''  Mrs. Pritchard testified: ''I had
recently overstudied at college very badly, and the folks
preferred we should live on the orange grove on account
of my health, and my husband was not sure that he could
support the orange grove and a wife, and my father agreed
that he would help. . . . My husband objected to taking
anything from his future father-in-law and mother-in-law,
and my papa said: 'Well, they would get around that ques-
tion or difficulty by putting it into the place and conve-
niences on the place,' and wanted to know if my husband
would consider we were partners.  The idea is that my
husband already had a son, the reason that there was such
a definite business agreement, how he would regard that
the property stood.  My husband said that was the only
property that he had and he would be glad to make that
arrangement.''

Pursuant to this arrangement, and within two months
thereafter, the father advanced the sum of $350.  Later he
advanced $450 to enlarge and improve the residence on the
place and about the time of the marriage he gave Mrs.
Pritchard $250, which was spent on the place.  After the
marriage the father expended $250 or $300 in the construc-
tion of a garage and implement shed.  Other sums were
advanced for the purchase of livestock, implements, orange
trees, and other expenses in the operation of the place.  All
told, the father furnished between $3,000 and $3,500 for the
care, development, and improvement of the property.

[1] Appellant contends that there is no evidence to
support the court's finding that the property involved was
the community property of the defendant and his wife Lena
L. Pritchard.  The understanding between the parties as
to the ownership of the property in question was not re-
duced to a formal agreement.  It devolved upon the trial
court to find, from the evidence bearing upon the question,

the character of the wife's interest. In determining the question, the court probably gave consideration to the lack of familiarity of the witnesses with legal terms. Mrs. Pritchard testified that she did not know anything about the legal relationship of partners. The defendant testified that ''it was a matrimonial partnership, that is, it was a joint proposition, that whatever we were interested in, we would be interested in together.'' The evident purpose was to provide against the diversion from the wife's enjoyment of her parent's contribution to the property. This purpose was emphasized by the knowledge that the defendant had a son by a former marriage. The testimony of the defendant and his wife showed that the latter had an interest in the property. The evidence is not such as to require the court to find that her interest was joint, or in common or a partnership interest rather than that of community property.

That the wife had an interest in the property is very clear. What the character of that interest was is not so certain. The court came to the conclusion, on a balancing of probabilities, that a community interest was intended by the parties. It cannot be said that the court's finding has no support in the evidence.

[2] That a husband and wife may by contract change the character of their property from community to separate is well settled. (*Perkins* v. *Sunset Tel. & Tel. Co.*, 155 Cal. 712, [103 Pac. 190] ; *Fay* v. *Fay*, 165 Cal. 469, [132 Pac. 1040].) Likewise they may by contract transmute the separate property of either into community property. (*Yoakam* v. *Kingery*, 126 Cal. 30, [58 Pac. 324] ; *Carlson* v. *Carlson*, 10 Cal. App. 300, [101 Pac. 923].) [3] No sound reason suggests itself why they may not accomplish the same purposes by contract made prior to and in anticipation of marriage. [4] The law requires such contracts to be in writing. Where the contract has been fully executed by one party, the case is taken out of the statute. ''As the antenuptial contract is alleged to have been completely executed, the same is not assailable by the parties thereto, or by third parties, on the ground that it was not in writing, as prescribed by statute.'' (*Hussey* v. *Castle*, 41 Cal. 242.) ''A parol agreement to give an intended daughter-in-law a lot of land as a home for the family, if, with her means, a suitable dwelling-house was erected on it, which

has been done—will be enforced in equity by a decree of specific performance.'' (*Neale* v. *Neale,* 76 U. S. (9 Wall.) 1, [19 L. Ed. 590, see, also, Rose's U. S. Notes].) In *Magee* v. *Magee,* 174 Cal. 276, [162 Pac. 1023], the owner of a lot of land orally agreed to convey it to his brother, in consideration of the latter's erecting on the land and furnishing a house for the use of their parents, during their lives. The vendee performed his part of the contract. It was held that such performance took the case out of the statute of frauds.

If it be conceded that the land here involved is not community property, but that the wife's interest therein is equitable only, still the husband could not in good conscience convey the same without her consent. It cannot be said that it was the legal duty of the husband to perpetrate a fraud upon his wife in order to carry out a contract which he had improvidently made with a stranger. Further, if the antenuptial agreement be held ineffective for any purpose, then part of the personal property included in the contract to exchange was the wife's separate property, because purchased with funds given to her by her father, and the husband could not dispose of it and, consequently, he was without the authority to perform his part of the contract in full. It does not appear what the value of such personal property was, or whether the plaintiff would have accepted a conveyance of the other property described in the contract as performance of the terms therof by the defendant.

The appellant urges that the defendant was guilty of bad faith and that the measure of damages is the difference in value of the respective properties. Section 3306 of the Civil Code provides: ''The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.'' [5] Bad faith must be pleaded. (*Yates* v. *James,* 89 Cal. 474, [26 Pac. 1073]; *Willard* v. *Smith,* 34 Mont. 494, [87 Pac. 613].)

One may be guilty of bad faith in entering into a contract which he knows he cannot perform or by refusing to carry out the terms of his contract which he can perform. [6] The only allegation of the complaint herein under which bad faith could be proven is that the defendant refused to perform his contract "without any just reason or excuse." This cannot be taken as an allegation of bad faith on the defendant's part in entering into the contract. The defendant did not inform the plaintiff and the plaintiff did not know at the time the contract was executed that the defendant was married or that his wife had or claimed any interest in the property, though it is not claimed that the defendant willfully deceived the plaintiff. The plaintiff argues that it was bad faith on the part of the defendant not to disclose his inability to convey the property. His agreement to sell was an implied representation that he was able to give a good title. Bad faith, however, in making the contract, not having been pleaded, cannot help the cause of the plaintiff. If the allegation of refusal to convey "without any just reason or excuse" is a sufficient averment of bad faith, the answer is that there was sufficient reason for the refusal, the bad faith, if any, being in connection with the execution of the agreement and not in the failure to carry out the provisions thereof.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1921, and the following opinion then rendered thereon:

THE COURT.—We concur in what is said by the district court of appeal on the question of measure of damages and bad faith. There was no sufficient allegation of bad faith, and, therefore, no basis for an award as damage of "the difference between the price agreed to be paid and the value of the estate agreed to be conveyed." No damage other than this was alleged. The trial court's finding of no actual damage is fully sustained. [7] Assuming that there was a breach by the defendant of his agreement to

convey, plaintiff would be entitled to nominal damages only, and a judgment therefor would not carry costs (Code Civ. Proc., sec. 1022, subd. 3). **[8]** And a judgment for a defendant in an action *ex contractu* for damages where it is established that a plaintiff is entitled to nothing more than nominal damages will not be reversed on appeal. (See *McAllister* v. *Clement,* 75 Cal. 182, [16 Pac. 775]; *Lick* v. *Owen,* 47 Cal. 252.)

In denying the application for a hearing herein we are not to be understood as intimating an opinion as to any other matters discussed in the opinion of the district court of appeal.

The application for a hearing in this court after decision by the district court of appeal of the third appellate district is denied.

Angellotti, C. J., Shaw, J., Sloane, J., Shurtleff, J., and Lawlor, J., concurred.