[Civ. No. 1471. Fourth Appellate District.—February 7, 1934.]

FRANK SUDBROCK, Plaintiff and Respondent, v. ELIZA-BETH KROENER, Appellant; MAE L. SUDBROCK, Third Party Claimant and Respondent.

Allen & Lyon, Forgy, Reinhaus & Forgy and S. M. Reinhaus for Appellant.

Harry C. Westover and D. G. Wettlin for Respondents.

WARMER, J., *pro tem.*—On or about March 7, 1932, Frank Sudbrock, as plaintiff, instituted suit against Elizabeth Kroener, as defendant on a promissory note for $600, dated March 23, 1927, and due one year thereafter, to recover the principal sum thereof with interest.

Elizabeth Kroener filed an answer and cross-complaint, by which cross-complaint she prayed judgment against

plaintiff and cross-defendant for services performed between January 1, 1921, and the seventh day of March, 1932. Upon the trial of the cause, the court rendered its opinion on or about the fourteenth day of December, 1932, finding a balance due the cross-complainant from cross-defendant in the sum of $1,055.78. Findings were made and judgment was entered accordingly on or about December 27, 1932. A motion for new trial was denied January 20, 1933. No appeal was taken and hence the judgment has become final. At the time of the commencement of the action Frank Sudbrock was a single person of the age of seventy years, and entirely deaf. In March, 1932, he became engaged to Mae L. Sudbrock and on August 22, 1932, they were married. An agreement was entered into between them during the month of March, 1932, to the effect that if the said Mae L. Sudbrock would marry said Frank Sudbrock and care for him during the rest of his life, he would turn over to her all of his worldly possessions.

Frank Sudbrock, at about that time, took Mae L. Sudbrock to a bank and exhibited to her certain of his possessions, including a certificate of deposit issued by the bank and two promissory notes for $100 each, made payable to Frank Sudbrock. At the time of their marriage Mae L. Sudbrock relied on the promise of Frank Sudbrock to turn over to her his property as agreed. At the time of the marriage the notes and certificate of deposit were payable to Frank Sudbrock. On or about October 21, 1932, the certificate of deposit was turned in to the bank and a new certificate of deposit was issued by the bank payable to Frank Sudbrock in the sum of $2,750. On or about December, 1932, this certificate of deposit was turned in to the bank and a new one issued for the same amount, made payable to Frank Sudbrock and Mae L. Sudbrock, as joint tenants. Frank Sudbrock objected to the certificate of deposit so issued being made payable to him and his wife as joint tenants, and returned same to the bank, whereupon, and at his request, the bank canceled said certificate and issued another in the same amount made payable to Mae L. Sudbrock on or about December 27, 1932, and on the same day Frank Sudbrock indorsed said two notes and delivered them to Mae L. Sudbrock. The certificate of deposit and notes were retained by Mae L. Sudbrock. The sheriff

levied on said certificate of deposit under and by virtue of the aforesaid judgment. Mae L. Sudbrock filed a third party claim for the property so levied upon. Elizabeth Kroener furnished and filed a bond with the sheriff requiring him to keep the property so levied upon. Elizabeth Kroener filed a petition to have the interest of the parties, and title and ownership of the property, determined. Upon the hearing of said petition the court made findings and conclusions and entered its judgment and order that said property was the property of Mae L. Sudbrock and ordered the sheriff to return same to her. From such judgment and order the petitioner has appealed.

The question presented on this appeal is whether or not the transfer of the property by Frank Sudbrock to Mae L. Sudbrock prior to the levy thereon by the sheriff was such a performance of an oral antenuptial agreement as to avoid the statute of frauds and the provisions of section 3442 of the Civil Code.

An agreement made upon consideration of marriage other than a mutual promise to marry is invalid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged. (Sec. 1624, subd. 3, Civ. Code.)

Marriage, from the earliest period of the common law, has ever been held to be a sufficient consideration for a conveyance of land, and such conveyances have ever been regarded as being entitled to as full protection as conveyances made on the most ample pecuniary consideration. (*Otis* v. *Spencer*, 102 Ill. 622 [40 Am. Rep. 617, cited in 41 A. L. R. 1164]; *Cohen* v. *Knox*, 90 Cal. 266, 273 [27 Pac. 215, 13 L. R. A. 711].

However, such is not the question here presented. At the time of the transfer of the certificate of deposit and two promissory notes, the marriage had already been consummated and the transfer was made in the carrying out of an oral antenuptial agreement and not in consideration of marriage, even though the marriage was agreed to and the marital relation entered into on the oral promise that such transfer would, in fact, be made. Until the marriage was consummated the claimant herein (Mrs. Sudbrock), wife of Frank Sudbrock, had the right to exact from him a written agreement, and thus avoid the

inhibitions of section 1624, subdivision 3, of the Civil Code, or to demand the transfer of the property before marriage and to refuse to consummate the marriage until the transfer had been accomplished, or to proceed with consummation of the marriage and rely upon his willingness and ability to make the transfer,—in the latter case, assuming on her part full responsibility for any legal difficulty that might affect his ability to make the transfer. This course she chose. Any opinion, as to any question that might arise from any course of conduct different from the course followed by the parties to the contract is not here involved. Marriage by the parties is not such a performance of an oral antenuptial agreement as to accomplish the removal of the contract from the effect of the statute of frauds (sec. 1624, subd. 3, Civ. Code).

In *Hughes* v. *Hughes*, 49 Cal. App. 206, 211 [193 Pac. 144, 145], the court says:

"The fact that the parties were afterward married does not operate to lift the bar of the statute. 'A promise made in anticipation of a marriage, followed by a marriage, is the exact case contemplated by the statute. It is plain that the marriage adds nothing to the very circumstances described by the statutory provision which makes a writing essential; in fact, until a marriage takes place, there is no binding agreement independent of the statute, so that the marriage itself is a necessary part of every agreement made upon consideration of it which the legislature has said must be in writing.'" (Citing cases.)

See, also, *Peek* v. *Peek*, 77 Cal. 106 [19 Pac. 227, 11 Am. St. Rep. 244, 1 L. R. A. 185] ; *Trout* v. *Ogilvie*, 41 Cal. App. 167 [182 Pac. 333].

In the proceeding in which this appeal was taken the court found in part as follows:

"That at the time the agreement was made by the said Frank Sudbrock and Mae L. Sudbrock in March, 1932, and at various times thereafter, said Mae L. Sudbrock did not know that Elizabeth Kroener was a creditor of said Frank Sudbrock; that on the 22nd day of August, 1932, when said Frank Sudbrock and Mae L. Sudbrock were married said Mae L. Sudbrock did not know that Elizabeth Kroener was a creditor of said Frank Sudbrock; that at the time of the making of said prenuptial agreement and at the time

of the marriage of said parties, said Mae L. Sudbrock had no intent to defraud the said Elizabeth Kroener; that at the time the said Frank Sudbrock entered into said agreement with said Mae L. Sudbrock he was not conscious of any indebtedness to said Elizabeth Kroener or any other person, and that he entered into said agreement in good faith to secure the services and care of said Mae L. Sudbrock and without any intent to defraud said Elizabeth Kroener or any other creditor; that said prenuptial agreement between said Mae L. Sudbrock and Frank Sudbrock was not in writing but was oral, but that said prenuptial agreement was consummated and executed on or about the 27th day of December, 1932, when said Frank Sudbrock transferred and turned over to Mae L. Sudbrock all of his said property.''

The transfer of said certificate and notes was a valid transfer unless inhibited by the provisions of section 3442 of the Civil Code, which reads:

''In all cases arising under section twelve hundred and twenty-seven, or under the provisions of this title, except as otherwise provided in section thirty-four hundred and forty, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration; provided, however, that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors.''

Since the proviso in said section was added by the legislature in 1895, the effect thereof has been determined by our Supreme Court. In *Hemenway* v. *Thaxter*, 150 Cal. 737 [90 Pac. 116], the court said: ''That the conveyance, if voluntary, was in fraud . . . scarcely requires argument. Section 3442 of the Civil Code provides (quoting above proviso). Hemenway admits that by this conveyance he divested himself of all property liable to execution; that he became thereby, and has ever since remained, insolvent. The consequence of this conveyance being, then, to render Hemenway insolvent, he will be presumed to have intended its natural consequence, from which follows an intent to

become insolvent, or contemplated insolvency, in the language of the act.''

The rule is stated in 12 California Jurisprudence, page 1019, section 60, thus: ''By express provision, a voluntary conveyance made by an insolvent, or by one in contemplation of insolvency, is now conclusively presumed to be fraudulent as to existing creditors. The insolvency of the voluntary grantor is conclusive of fraudulent intent, and no other facts can control, influence or overcome this presumption. The question of an actual intent is immaterial.'' (See, also, *Hanscome-James-Winship* v. *Ainger,* 71 Cal. App. 735 [236 Pac. 325], and cases cited.)  ▮  Where the transfer renders one insolvent, his insolvency is contemplated by the very act of making the transfer (*Knox* v. *Blanckenburg,* 23 Cal. App. 298 [152 Pac. 59]). Against existing creditors, no one can transfer all his property in consideration of future support so as to defeat any such creditor in enforcing his claim, for under such circumstances the law presumes the act to be done with fraudulent intent,—to hinder and delay the creditor in the collection of his debt. This is by reason of the fact that every person is presumed to know what the direct result of his acts will be (*Baxter* v. *Baxter,* 19 Cal. App. 238 [125 Pac. 359]; *Benson* v. *Harriman,* 55 Cal. App. 483 [204 Pac. 255]. Where the transfer is of all the property owned by the transferor, by the making of the transfer he became insolvent. Hence, that the transfer was in contemplation of insolvency will admit of no doubt. (*Southwick* v. *Moore,* 61 Cal. App. 585, at 590 [215 Pac. 704], and cases there cited.) In the case of *Benson* v. *Harriman, supra,* the Supreme Court, in denying a hearing in that court, said:

''It was an action to recover . . . a debt owing by him to plaintiff on agreement. . . . The judgment therein was proof that defendant was indebted to plaintiff on the contract at the time the action was begun. The fact that the debt was for the reasonable value of the services and to that extent unliquidated was immaterial on the question of the right of the plaintiff to maintain this action to set aside the fraudulent conveyance.''

In the case of *Lefrooth* v. *Prentice,* 202 Cal. 215, at page 228 [259 Pac. 947], the court says:

"It must be borne in mind that under section 3442 of the Civil Code (quoting the proviso of said section). Under such a showing the fraudulent intent on the part of the grantee of such transfer is immaterial. (Citing cases.) It is also true that in such case the intent to defraud creditors is not required. See *Atkinson* v. *Western D. Syndicate,* 170 Cal. 503, 506 [150 Pac. 360], where it is said: 'If these conditions, to-wit, a grant made without consideration by a person insolvent or in contemplation of insolvency, are present, the intent of the grantor is immaterial and the transfer, regardless of the actual intent, is void as to creditors.' "

■ Where the rights of a creditor are involved, the view accepted by all the courts is that a postnuptial settlement in pursuance of an antenuptial agreement is not binding on an existing creditor. (41 A. L. R. 1169.) Where a statute declares an oral antenuptial agreement void, it cannot be validated by a postnuptial contract. To hold that it could be so held valid would announce a doctrine that would, in effect, work a judicial repeal of the statute (*Fischer* v. *Dolwig*, 39 N. D. 161 [166 N. W. 793]; *Rowell* v. *Barber*, 142 Wis. 304 [125 N. W. 937, 27 L. R. A. (N. S.) 1140]; 27 C. J. 542, sec. 238). ■ If the agreement to make the transfer or conveyance cannot be made the basis of an action to compel the conveyance of the property, because the agreement is void under the statute of frauds, then any conveyance in pursuance thereof is voluntary (27 C. J. 542).

Counsel for respondent rely on the cases of *Freitas* v. *Freitas,* 31 Cal. App. 16 [159 Pac. 611]; *Hussey* v. *Castle,* 41 Cal. 239; *Martin* v. *Pritchard,* 52 Cal. App. 720 [199 Pac. 846]. These cases are readily distinguishable from the holding herein. In the case of *Freitas* v. *Freitas, supra,* there is no question of a creditor involved and hence it is not authority on the rights of an existing creditor at the time of the transfer. The case merely holds that as between the parties, if a transfer is made in conformity with and in pursuance of an antenuptial oral agreement, the same is consummated and the statute, in such instance, has no application. *Hussey* v. *Castle, supra,* was decided prior to the amendment to section 3442 of the Civil Code and is therefore not authority on the question here presented since said amendment. In *Martin* v. *Pritchard, supra,* the following

quotation from *Hussey* v. *Castle, supra,* "as the antenuptial contract is alleged to have been completely executed, the same is not assailable by the parties thereto, or by third parties, on the ground that it was not in writing as prescribed by statute", is pure *dicta*.

For the foregoing reasons the transfer of the certificate of deposit and notes, in pursuance of the antenuptial oral agreement at a time subsequent to the marriage, did not constitute an executed oral agreement so as to avoid the effect of the statute of frauds. Hence it was not a transfer that could have been enforced after marriage. It was a voluntary transfer without consideration and, inasmuch as it was a transfer of all the property of the transferor, it was in contemplation of insolvency. Elizabeth Kroener, being an existing creditor, the transfer as to her was void.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.