[Civ. No. 16420.   Second Dist., Div. Two.   Apr. 5, 1949.]

WILLIAM S. MOONEY, Respondent, v. PRISCILLA
MOONEY, Appellant.

Allan L. Leonard for Appellant.

John E. McCall for Respondent.

MOORE, P. J.—Appellant takes exception to that portion of the interlocutory decree of divorce awarding plaintiff, as his share of the community property, an undivided one-half interest in (1) certain real property, (2) an undivided one-half interest in the furniture in the dwelling thereon, and (3) an undivided one-half interest in a malt shop and its fixtures.

From August, 1940, until July 8, 1944, appellant rented from the owners and conducted a boarding house in the dwelling situate on the real property. On the latter date and while yet a single woman, she executed an agreement to purchase the same realty. On October 7, 1944, she married respondent. Thereafter, a building known as "the malt shop" was constructed upon the realty, equipped and operated as a going business.

In September, 1946, respondent filed a complaint for divorce on the ground of mental cruelty and alleged:

"That there is community property of the parties hereto consisting of and inclusive of his separate property:

"(1) A seven-room dwelling house and Malt Shop business . . .

"(3) Furniture in dwelling house and fixtures in Malt Shop. . ."

Appellant's answer denied the above quoted allegations and alleged "that all the property listed . . . is the separate property of defendant, she having acquired and owned same prior to the marriage. . ."

Appellant also filed her amended cross-complaint for divorce which alleged: "That there is no community property belonging to the parties hereto. . . That all the property which cross complainant owns is her separate property having acquired same prior to her marriage. . ."

The answer to the cross-complaint alleged that the property mentioned in the complaint is community property.

After trial the court made nine findings of fact as to the veracity of the pleadings, and a tenth finding as follows:

"The Court further finds that the community property of the parties consists of the dwelling and Malt Shop* located at No. 11977 Inglewood Avenue, Hawthorne, California, and the furniture in the house and the fixtures in said Malt Shop."

The quoted finding is specific and will control if in conflict with general findings as to the pleadings. (*Staub* v. *Muller,* 7 Cal.2d 221, 226 [60 P.2d 283]; *Turner* v. *Turner,* 187 Cal. 632, 635 [203 P. 109].)

Appellant concedes that the fixtures in the malt shop are community property, but contends that the evidence does not support that portion of finding ten as to the shop itself. While the evidence is in conflict as to the source of the moneys with which the malt shop was acquired, since it was constructed after marriage, the presumption that it belongs to the community estate is sufficient evidence to support the finding that the shop as well as the fixtures therein is the community property of the parties. (Civ. Code, § 164.)

Appellant next contends that finding the realty to be community property is unsupported by the evidence. The agreement for its purchase shows on its face that a down payment of $500 and three installments of $50 each were made prior to the marriage of the parties. The testimony as to the source of all the payments made on the contract price was in conflict, each party claiming to be the source of the moneys. Inasmuch as the court adopted respondent's testimony we must assume that all payments were made with his money. But this factor alone would not convert into community property all of the parties' rights in the realty. When the down payment and the first three installments were made there was as yet no community interest because there was then no marriage relationship between them. These payments, in the absence of a marriage contract or agreement to the contrary would therefore constitute gifts or contributions to the separate property of appellant.

But as to the purchase of the real property respondent testified as follows: "I suggested that the payment be made out of the savings account which we had accumulated and authorized her and suggested that she do it and do it as soon as possible. The understanding that we had was that when we were married that inasmuch as all of the money I furnished

*Both structures are on the real property which appellant contracted to buy.

to buy the property and the payments thereon had been furnished by me, that it would then be transferred into our joint names." This testimony is sufficient to support an implied finding that the parties had agreed to treat the property as community. ■ That such agreement not only existed between the parties but was in fact consummated during their marriage is established and affirmed by their acts and conduct in purchasing, improving and dealing with the property during their marriage. It is well settled that such an executed oral agreement serves to change the status of property from that of separate to community. (*Kenney* v. *Kenney,* 220 Cal. 134, 136 [30 P.2d 398]; *Rogers* v. *Rogers,* 86 Cal.App.2d 817, 821 [195 P.2d 890].) It must therefore be concluded that the finding of the trial court as to the dwelling is correct and supported by the evidence.

■ Appellant's final contention is that the evidence does not support that part of finding X that the furniture is community property. The only evidence in support of the finding is the testimony of Mr. Mooney as follows:

"Q. You didn't know anything about Mrs. Mooney's possessions then [before marriage], did you? A. Only what she told me.

"Q. What did she tell you? A. That she had rented this place and run a boarding house and had been able to pay for an automobile, and told me about a year or so before that she had gone to Barker Bros. and had bought some furniture on credit, a couple of hundred dollars worth of furniture, and all of her friends had advised her not to do it and they laughed at her for doing it and she bragged about how she had paid it off and showed me receipts from the various people that she had bought stuff from that her credit was good, that she had paid it off, and I thought that was darned nice. . . .

"Q. You testified yesterday that we—I suppose meaning you and Mrs. Mooney—bought other furniture, that she had certain household furniture at the time of the marriage. What did you buy after the marriage, you and she together? A. Well, I don't know that I bought anything particularly. I remember we went downtown shopping for a set of dishes and I remember one night we were in Sears Roebuck's store over here and she came running up. She had seen a rug she wanted and we went over and got it. And as I stated yesterday, testified yesterday, Mrs. Mooney ran the house and she had the money to buy anything I could afford. There were little things that I brought her like any husband would. I know

that I had the kitchen floor—she was crazy to have a nice tile floor in the kitchen and the bathroom. I bought all that stuff and hired the man to put it down. I bought her things like that that I could afford as we went along.''

It is apparent that not only does the above quoted testimony not support the finding, but also that the finding is completely contrary to the testimony of the witness. Except for the rug referred to, all other furniture in the house had been bought and paid for by appellant prior to her marriage in order to run her boarding house. Although as appears in Mr. Mooney's testimony "we went shopping for a set of dishes," there is no showing that the dishes were purchased at that time or subsequently. Such evidence is all too tenuous to support a finding that the furniture in a seven-room house is community property. Indeed, such a finding is refuted by the very testimony upon which it depends and is contrary to Civil Code, section 162: "All property of the wife, owned by her before marriage . . . is her separate property.'' Nor is there any evidence in the record tending to show an agreement to treat the furniture as community property such as that with reference to the real property.

In view of this state of the evidence it is ordered that finding X is hereby stricken and in lieu thereof the following is substituted: The court finds (a) that the community property of the parties consists of Lots 1, 2, 3, 4, 37 and 38 of Tract 2704 according to Map Book 27, page 52, Los Angeles County records, the dwelling and the malt shop situate thereon, the fixtures in the malt shop, and the rug purchased by the parties from Sears Roebuck; (b) that the separate property of defendant consists of the furniture and other movables situate in said dwelling at the time of her marriage to plaintiff.

It is ordered that the judgment here on appeal be and it is reversed and the court below is instructed to enter a new judgment in accordance with finding X as made by this court.

Wilson, J., concurred.

McCOMB, J.—I adhere to the views expressed by this court in *Mooney* v. *Mooney,* *(Cal.App.) [202 P.2d 352].

Appellant's petition for a hearing by the Supreme Court was denied June 2, 1949. Carter, J., and Traynor, J., voted for a hearing.

*A rehearing was granted March 2, 1949.