[Civ. No. 244. Fifth Dist. Aug. 21, 1963.]

Estate of TOROS DOKOOZLIAN, Deceased. VIOLET GEJEIAN et al., Plaintiffs and Appellants, v. ANGELINE DOKOOZLIAN, Defendant and Respondent.

James C. Janjigian for Plaintiffs and Appellants.

Ray W. Donahue for Defendant and Respondent.

BROWN (R. M.), J.—The deceased, Toros Dokoozlian, died April 27, 1961, leaving no parents or children, but leaving a wife, Angeline Dokoozlian, respondent herein, whom he had married on September 8, 1960. His will dated July 2, 1958, contained specific bequests, and the residue was bequeathed to his niece and nephews, petitioners and appellants herein. No contention is made on this appeal that respondent widow was provided for in the will or mentioned therein.

Appellants, after the will was admitted to probate, filed a petition to determine heirship, alleging that the respondent widow was adequately and amply provided for by the de-

cedent by reason of an oral prenuptial marriage contract; that the same had been fully executed and completed prior to the marriage and confirmed by the deceased and the widow, and accepted by her. The respondent widow denied the assertion and claimed one-half of the residue of the estate under Probate Code section 70.

The pretrial conference order defined the issues as to whether the respondent widow was provided for by the decedent pursuant to a marriage contract and whether she is entitled to receive one-half of the separate and community property of the decedent or whether the petitioners and appellants are entitled to all of the same.

During the trial before a jury the petitioners and appellants placed in evidence a grant deed dated August 30, 1960 (eight days prior to the marriage) which, for a valuable consideration, conveyed the dwelling house of the decedent to the decedent and the respondent widow (in her soon-to-be-acquired married name of Dokoozlian), as joint tenants; and also introduced a bank signature card and a savings ledger card showing the establishment of a joint bank account in the sum of $10,000 in the names of the decedent and respondent widow.

Efforts of appellants to call the executors, also respondents herein, and the respondent widow as witnesses as well as an offer of proof to establish that the conveyances of the deed and bank account by the decedent to the respondent widow prior to marriage were made by the decedent and accepted by the respondent widow prior to and in contemplation of marriage with the intention and purpose of providing fully and adequately for the widow's support in the event of decedent's death, that their agreement was fully executed during the lifetime of the parties, and that their agreement was oral and was fully performed, were objected to by counsel for the respondent widow on the ground that section 70 of the Probate Code prohibits oral evidence to establish such an antenuptial agreement, even if performed. During the trial the appellants made the following offer of proof which was rejected by the trial court:

"That there was an oral agreement (ante-nuptial) made and entered into before the marriage of Toros Dokoozlian and Angeline Ouzounian, and by and between them, whereby it was by them mutually covenanted and agreed that as a condition of and in consideration of the promise of Angeline to marry Toros, that Toros would out of his separate property

establish a $10,000.00 joint bank account with Angeline, and would place his dwelling house (Lot 11 Glenwood Village No. 2, City of Dinuba) valued at $17,500.00 into joint tenancy with Angeline, in advance of their marriage, and that these parties both then agreed that these conveyances of property to Angeline were to be a full and final marriage settlement, and that she would receive no more of Toros' property, and same were intended to provide for her entire support and security in the event of the possible death of Toros, and as security for her entire future maintenance upon his death; That the said properties were in fact so conveyed to Angeline by Toros and were accepted by her as above set forth, prior to marriage, by written instrument of conveyance executed by Toros as to the realty, and Toros and Angeline as to the bank account, on August 30, 1960, pursuant to their above pre-nuptial agreement, and that the parties married September 8, 1960; and that after and during their marriage they and each of them orally, and by their conduct confirmed, reaffirmed, ratified, and specifically repeated and reestablished their said prenuptial agreement and all of the terms thereof, and that the same was fully executed during the lifetime of both of them; that the deed of August 30, 1960 on its face shows an extrinsic ambiguity in that it describes the parties as husband and wife 'now', whereas they were not married until September 8, 1960; and that pursuant to the said agreement, upon the death of Toros some seven months after their marriage, Angeline received property and cash of the value of $27,500.00.''

The trial court upheld the objection of the respondent on the ground above mentioned, refused to permit the oral testimony offered by petitioners in support of their offer of proof, granted a motion for nonsuit made by the respondent widow, and subsequently denied a motion for new trial and motion to vacate the order granting nonsuit. The court also refused to accept as exhibits those documents relating to the subsequent receipt of the moneys from the bank by the respondent widow.

■■■ Appellants take the position that an oral prenuptial agreement fully performed by the transfer of the property and the consummation of the marriage does not have to be in writing pursuant to Probate Code section 70, and that therefore, the will is not revoked.

Probate Code section 70 provides that there are exceptions to rebutting the presumption of revocation—a marriage

contract which provides for the surviving spouse, a provision providing for the spouse in the will, or the mention of the spouse therein to show an intention not to make provision, and the further proviso that ''and no other evidence to rebut the presumption of revocation can be received.''

In *Estate of Duke,* 41 Cal.2d 509 [261 P.2d 235], in upholding the fact that the spouse was mentioned in the will by the terms ''by reason of marriage or otherwise,'' the court stated at page 512: ''The policy of law which underlies this section has been declared to be the social disfavor toward a testator's failure to provide for a surviving spouse. (*Sanders* v. *Simcich,* 65 Cal. 50, 52 [2 P. 741]; *Rundell* v. *McDonald,* 41 Cal.App. 175, 181 [182 P. 450].)  As the court said in the *Sanders* case, '[t]he law presumes that the subsequent marriage of a testator has wrought such a change in his condition in life as to cause him to destroy or cancel a previous will; and does not admit of evidence to the contrary unless provision has been made according to law for wife and children who have survived him.'  (P. 52.)''

Civil Code section 178 requires that, ''All contracts for marriage settlements must be in writing, and executed and acknowledged or proved in like manner as a grant of land is required to be executed and acknowledged or proved.''

*Corker* v. *Corker,* 87 Cal. 643 [25 P. 922], relates to a post-nuptial agreement and refers to section 1299 of the Civil Code (now Prob. Code, § 70), stating at pages 648-649: ''Section 1299 unequivocally declares that, except in the instances therein specified, 'if, after making a will, the testator marries, and the wife survives the testator, the will is revoked.' When the will is offered for probate, the surviving wife, in order to defeat its probate, need only show that she was married to the testator subsequent to its execution.  The burden is then cast upon the proponent to show the existence of one of the conditions which except it from this rule.  If the wife is not mentioned in the will, he must show that 'provision has been made for her' by 'marriage contract.' And in order to emphasize the rule that the instrument itself is the only mode of proof, the section further declares: 'And no other evidence to rebut the presumption of revocation must be received.'

''The plain meaning of this clause is, that unless the instrument shows upon its face that it is a 'marriage contract' within the meaning of the section, and that by it 'provision' has been made for the wife, and that such provision was intended to take the place of testamentary provision for her, the will is

revoked. The wife is not called upon to introduce any further proof, and the proponent is limited in his proof to the marriage contract itself. Nor can the court receive any evidence for the purpose of showing the intention of the parties to the instrument, or their relative conditions of wealth at the time it was executed, or the effect which will result from its enforcement. If the instrument is a 'marriage contract,' and purports to make 'provision' for the wife, the court cannot inquire into the character or extent or reasonableness of such 'provision' any more than it can in other contracts between parties who are *sui juris.* If the parties are themselves satisfied with the 'provision,' it is not for the court to substitute its judgment for theirs as to its sufficiency. So long as the execution of the contract is not impeached, it is as binding upon the parties as would be any other contract.

"If the instrument does not on its face purport to make provision for the wife in lieu of testamentary provision, the court cannot receive evidence of any character for the purpose of showing that such was the intention of the parties."

Such testimony may be received for the purpose of proving a fully performed oral antenuptial agreement and such a contract would not be excluded under Civil Code section 1624.

In *McComsey* v. *Leaf,* 36 Cal.App.2d 132, 142 [97 P.2d 242], the court distinguishes *Sudbrock* v. *Kroener,* 136 Cal. App. 624 [29 P.2d 435], because the performed antenuptial agreement operated a fraud upon creditors, and held, as in *Freitas* v. *Freitas,* 31 Cal.App. 16 [159 P. 611], that after the mutual execution of an oral contract and its consummation, it is vain to object for want of a writing. Where the contract has been fully executed by one party, the case is taken out of the statute. ". . . as the ante-nuptial contract is alleged to have been completely executed, the same is not assailable by the parties thereto, or by third parties, on the ground that it was not in writing, as prescribed by statute" (*Hussey* v. *Castle,* 41 Cal. 239, 242; *Martin* v. *Pritchard,* 52 Cal.App. 720, 724 [199 P. 846]), and as far as insurance policies are concerned, in *Freitas* v. *Freitas, supra.*

In *Estate of Wahlefeld,* 105 Cal.App. 770, at page 775 [288 P. 870], the court stated that husbands and wives may contract to change property from community to separate, or vice versa, and this may be done before marriage if the contract is in writing or if an oral contract is fully executed.

The court said, in *Estate of Cummins,* 130 Cal.App.2d 821, 828 [280 P.2d 128]: "Thus, a husband and wife who own

separate property prior to their marriage, may, by an antenuptial agreement, transmute such property into the community property of the spouses. [Citations.] Such an agreement may be oral if it is executed subsequent to the marriage, as disclosed by acts and conduct in confirmation of the prenuptial agreement. (*Handley* v. *Handley, supra* [113 Cal. App.2d 280 (248 P.2d 59)]; *Kenney* v. *Kenney,* 220 Cal. 134, 136 [30 P.2d 398]; *Estate of Piatt,* 81 Cal.App.2d 348, 351-352 [183 P.2d 919]; *Martin* v. *Pritchard, supra* [52 Cal. App. 720 (199 P. 846)].) As indicated in the cases last cited, the basic issue resolves itself into an inquiry as to whether there is sufficient evidence to justify a finding, express or implied, that such preconjugal agreement existed and that it was consummated and confirmed during the marriage.''

Proof of an oral antenuptial agreement for the purpose of showing whether separate or community property was involved in the agreement is permissible under *Estate of Cummins, supra.* This latter case, however, involves an intestacy.

Appellants cite *Estate of Piatt,* 81 Cal.App.2d 348 [183 P.2d 919], for the authority that while the court held that the prenuptial agreement was invalid because not in writing under Civil Code section 178, it nevertheless admitted that the evidence showed that such oral agreement was fully confirmed, ratified and executed after the marriage.

In *Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398], involving a divorce action, the court upheld an executed oral agreement concerning the status of the property. This case accepts the well-established rule that an executed oral agreement may be used to change the status of property from that of separate to community, and that spouses may transmute their property accordingly, orally.

In the case before us the property covered by the executed deed and the transfer of funds in the bank are not involved in the probate proceedings, no effort being made to consider the realty or moneys as assets of the estate.

The court said, in *Horsman* v. *Maden,* 48 Cal.App.2d 635, at page 641 [120 P.2d 92]: ''In determining this question of intention, the declarations of the alleged donor, made either before or after the transfer, are admissible and such declarations need not have been made in the presence of the adverse party.''

The Dokoozlian deed does on its face indicate that the parties were married (though they were not actually), but it does not show any contemplation of marriage nor does it purport

to regulate the rights of inheritance of either party. (See 32 Cal.L.Rev., pp. 213, 214.) But we are not here concerned with the question of whether respondent is entitled to take against the will by virtue of section 70 of the Probate Code. The only question presented for determination is whether the court erred in excluding appellants' offered evidence.

The order denying a new trial is nonappealable and the purported appeal therefrom is dismissed.

Since the trial court erroneously rejected the offer of proof, we are impelled to reverse the judgment. The judgment is reversed.

Conley, P. J., and Stone, J., concurred.